# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JILL CELLI,** | : | |
| | : | |
| **Plaintiff,** | : | No. |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **NORTHEASTERN EDUCATIONAL** | : | |
| **INTERMEDIATE UNIT 19,** | : | |
| **FRED R. ROSETTI, Ed.D.,** | : | |
| **CLARENCE LEMANNA, Ed.D.,** | : | |
| **SUSAN WZOREK, JAMES O'HORA,** | : | |
| **KATHLEEN RACHOWSKI,** | : | |
| **THE SCHOOL DISTRICT OF** | : | |
| **ABINGTON HEIGHTS, DAVID** | : | |
| **ARNOLD, Ed.D.**, **MARIELLEN** | : | |
| **SLUKO, MARY ALICE BARTZ** | : | |
| **and BARBARA UNOSKI,** | : | |
| | : | **(ELECTRONICALLY FILED)** |
| **Defendants.** | : | |

## COMPLAINT

Plaintiff Jill Celli, by her undersigned counsel, hereby complains of Defendants Northeast Educational Intermediate Unit 19, Fred R. Rosetti, Ed.D., Clarence Lemanna, Ed.D., Susan Wzorek, James O'Hora, Kathleen Rachowski, The School District of Abington Heights, David Arnold, Ed.D., Mariellen Sluko, Mary Alice Bartz and Barbara Unoski (collectively, "Defendants") as follows:

## INTRODUCTION

1.    This is a claim brought under the free speech clause of the First Amendment to the United States Constitution, made actionable under 42 U.S.C. §

1983, and the Pennsylvania Whistleblower Law, 43 Pa.C.S.A. §§ 1421 et seq., for damages arising out of Defendants' malicious acts of retaliation against Plaintiff for reporting physical and emotional abuses of handicapped children in the Abington Heights School District by an NEIU teacher, Susan Wzorek. Plaintiff also brings related common law claims for defamation, civil conspiracy and intentional infliction of emotional distress.

## PARTIES

2.     Plaintiff Jill Celli ("Plaintiff") is a competent adult individual who resides at 901 Lackawanna Avenue, Mayfield, Lackawanna County, Pennsylvania 18433.

3.     Defendant Northeastern Educational Intermediate Unit 19 ("NEIU"), a regional educational service agency duly organized, established and existing under the laws of the Commonwealth of Pennsylvania, maintains a place of business at 1200 Line Street, Archbald, Lackawanna County, Pennsylvania 18403. NEIU is part of the public school system of the Commonwealth of Pennsylvania and provides statutorily-mandated educational services to school districts in Lackawanna, Pike, Susquehanna, Wayne and Wyoming Counties, including, inter alia, The School District of Abington Heights.

4.     Defendant Fred R. Rosetti, Ed.D. ("Rosetti"), a competent adult individual who resides in Lackawanna County, Pennsylvania, served as NEIU's

2

Executive Director at all times relevant hereto. Rosetti was a policymaker of NEIU and was authorized by NEIU to perform the duties and functions of NEIU's Executive Director and, in fact, acted within the scope of said duties and responsibilities at the time of the events outlined herein.

5.      Defendant Clarence Lemanna, Ed.D. ("Lemanna"), a competent adult individual who resides in Lackawanna County, Pennsylvania, is employed as NEIU's Director of Special Education. At all times relevant hereto, Lemanna was authorized by NEIU to perform the duties and functions of NEIU's Director of Special Education and, in fact, acted within the scope of said duties and responsibilities at the time of the events outlined herein.

6.      Defendant Susan Wzorek ("Wzorek"), a competent adult individual who resides in Lackawanna County, Pennsylvania, was employed by NEIU as an autistic support teacher at the time of the events outlined in this Complaint. At all times relevant hereto, Wzorek was authorized by NEIU to perform the duties and functions of an NEIU autistic support teacher and, in fact, acted within the scope of said duties and responsibilities at the time of the events outlined herein.

7.      Defendant James O'Hora ("O'Hora"), a competent adult individual who resides in Lackawanna County, Pennsylvania, was employed by NEIU as a life skills teacher at the time of the events outlined in this Complaint. At all times relevant hereto, O'Hora was authorized by NEIU to perform the duties and

functions of an NEIU life skills teacher and, in fact, acted within the scope of said duties and responsibilities at the time of the events outlined herein.

8.    Defendant Kathleen Rachowski ("Rachowski"), a competent adult individual who resides in Lackawanna County, Pennsylvania, was employed by NEIU as an autistic support teacher at the time of the events outlined in this Complaint.  At all times relevant hereto, Rachowski was authorized by NEIU to perform the duties and functions of an NEIU autistic support teacher and, in fact, acted within the scope of said duties and responsibilities at the time of the events outlined herein.

9.    Defendant The School District of Abington Heights ("Abington Heights") is a school district duly organized, established and existing under the laws of the Commonwealth of Pennsylvania which maintains a place of business at 218 East Grove Street, Clarks Summit, Lackawanna County, Pennsylvania 18411.

10.    Defendant David Arnold, Ed.D. ("Dr. Arnold") is a competent adult individual who, upon information and belief, currently maintains a place of business at the Prairie Valley Community School District, 1005 Riddle Street, Gowrie, Iowa 50543.  At the time of the events set forth in this Complaint, Dr. Arnold was employed as the Superintendent of the Abington Heights School District and, in that capacity, was a policymaker for Abington Heights.  At all times relevant to this action, Dr. Arnold was authorized by Abington Heights to

perform the duties and responsibilities of the School District's Superintendent and, in fact, acted within the scope of said duties and responsibilities at the time of the events outlined herein.

11.    Defendant Mariellen Sluko ("Sluko"), a competent adult individual who resides in Lackawanna County, Pennsylvania, was employed by Abington Heights as the Principal of the Clarks Summit Elementary School ("CSE") at the time of the events outlined in this Complaint.  At all times relevant hereto, Sluko was authorized by Abington Heights to perform the duties and functions of CSE's Principal and, in fact, acted within the scope of said duties and responsibilities at the time of the events outlined herein.

12.    Defendant Mary Alice Bartz ("Bartz"), a competent adult individual who resides in Lackawanna County, Pennsylvania, was employed by Abington Heights as a teacher at CSE at the time of the events outlined in this Complaint.  At all times relevant hereto, Bartz was authorized by Abington Heights to perform the duties and functions of a teacher at CSE and, in fact, acted within the scope of said duties and responsibilities at the time of the events outlined herein.

13.    Defendant Barbara Unoskie ("Unoskie"), a competent adult individual who resides in Lackawanna County, Pennsylvania, was employed by Abington Heights as a teacher at CSE at the time of the events outlined in this Complaint.  At all times relevant hereto, Unoskie was authorized by Abington Heights to perform

the duties and functions of a teacher at CSE and, in fact, acted within the scope of said duties and responsibilities at the time of the events outlined herein.

14.    As referenced in this Complaint, the term "Individual Defendants" shall collectively refer to Rosetti, Lemanna, Wzorek, O'Hora, Rachowski, Dr. Arnold, Sluko, Bartz and Unoski.

## JURISDICTION AND VENUE

15.    This Court possesses jurisdiction over the claims set forth herein pursuant to 28 U.S.C. §§ 1331, 1343, 1367 and 42 U.S.C. § 1983.

16.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to the claims set forth herein occurred in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.    Plaintiff Observes Wzorek Abusing Autistic Children In The Classroom.

17.    At all times relevant hereto, Plaintiff was employed as a teacher's assistant for NEIU.  In that capacity, Plaintiff worked in the classrooms with special education and/or handicapped children, many of whom were at least partially mainstreamed into regular classrooms as part of their Individual Educational Programs ("IEPs").

18.    From September of 2001 until May of 2003, Plaintiff worked with autistic children in an NEIU classroom at CSE.  During this period, the NEIU support teacher in charge of that classroom was Wzorek.

19.    As Wzorek's assistant, Plaintiff was charged with the duty and responsibility of attending to all of the daily classroom needs of the autistic students in Wzorek's classroom, who ranged from 6 to 12 years in age.  These duties and responsibilities included, inter alia, academic training, toileting, feeding and assisting in independent learning.  Also, Plaintiff routinely accompanied NEIU students to CSE's library, gym, cafeteria, art class, music class, computer training center and mainstream classrooms.

20.    During the course of performing her aforementioned duties and responsibilities, Plaintiff and co-worker Robin L. Medeiros ("Mrs. Medeiros"), who was also employed by NEIU as a teacher's assistant and worked in Wzorek's classroom at CSE, observed Wzorek physically, verbally and mentally abusing the autistic children in her classroom, many of whom do not speak.

21.    Although Plaintiff witnessed a few isolated acts of minor abuses during the 2001-02 school year, Wzorek's classroom abuses escalated and intensified during the 2002-03 school year, at which time Plaintiff also observed Wzorek being openly hostile and verbally abusive to parents and NEIU staff.

22.    Wzorek's abuses included, inter alia:

7

- improperly restraining students in a Rifton chair with duct tape and/or bungee cords;

- slapping students;

- screaming in students' faces;

- pulling students' hair;

- squeezing students by their hands, necks and noses, often to the point where the students cried in pain;

- stomping on students' insteps;

- putting tabasco sauce on a student's fingers to prevent him from putting his fingers in his mouth;

- refusing at times to allow students to eat;

- refusing to change a student who had urinated on himself;

- refusing to pick up a student who, while improperly and illegally duct-taped to a Rifton chair, had tipped over and fallen to the floor; and

- shoving a student face-first to the floor after he accidentally dropped pieces of his workstation.

**B.    Plaintiff Reports Wzorek's Classroom Abuses To NEIU's Executive Administrators.**

23.    Plaintiff and Mrs. Medeiros confronted both Wzorek and other NEIU co-workers at CSE in an attempt to stop Wzorek's abusive tactics.  Those efforts,

however, were not successful.  As a result, Plaintiff and Mrs. Medeiros decided to report Wzorek's abuses to NEIU's Executive Administrators.

24.    Specifically, in approximately June, 2003, Plaintiff and Mrs. Medeiros met with Lemanna, NEIU's Director of Special Education, and Michelle Homish ("Homish"), who worked in NEIU's Human Resources Department, to report the cruel and malicious abuses that Wzorek had inflicted on the autistic children in her NEIU classroom at CSE.  During the course of that meeting, Plaintiff and Mrs. Medeiros presented Lemanna with detailed information about the many different acts of abuses they had witnessed.

25.    After Plaintiff and Mrs. Medeiros disclosed Wzorek's aforementioned abuses, Lemanna stated that this matter was "over [his] head" and that he would have to get NEIU's Executive Director, Rosetti, involved.   In the meantime, Lemanna recommended that Plaintiff and Mrs. Medeiros document Wrozek's classroom abuses by type, date and names of the students involved.

26.    Within a few days of their meeting with Lemanna, Plaintiff and Mrs. Medeiros were advised by Homish that Rosetti wanted to meet with them personally to discuss their reports on Wzorek's classroom abuses.  That meeting took place in approximately late July, 2003.

27.    When Plaintiff and Mrs. Medeiros arrived at NEIU for her meeting with Rosetti, Mrs. Medeiros went directly to Rosetti's office while Plaintiff printed

off copies of documents she had gathered for the meeting. As Mrs. Medeiros approached his office, she observed that Rosetti was standing with his back to his office door, talking on the telephone. Standing directly outside Rosetti's office, Mrs. Medeiros overheard Dr. Rosetti -- who obviously did not see Mrs. Medeiros at the time -- say to the other person on the phone: "Don't worry Sue. They're coming in here to shoot their loads, but nothing's going to happen and then we'll be done with it." Upon information and belief, Rosetti was speaking to Wzorek at the time he uttered these remarks. Mrs. Medeiros informed Plaintiff of Rosetti's telephone comments as soon as she overheard them.

28.    Despite their outrage over Rosetti's offensive and pre-judgmental telephone remarks, Plaintiff and Mrs. Medeiros, urged on by Homish, elected to meet with Rosetti. During that meeting, Plaintiff and Mrs. Medeiros presented Rosetti with substantial documentary evidence which detailed, by type, date and students involved, the many acts of abuse that were inflicted by Wzorek. They also presented to Rosetti a telephone answering machine audio tape which contained a message from an NEIU student's mother expressing her concern over troublesome aggression Wzorek had exhibited towards both her and her child.

29.    After meeting with Plaintiff, Mrs. Medeiros and Homish as a group, Rosetti then said he wanted to meet with Plaintiff and privately, one at a time, to further discuss their complaints.

30.    During his private meeting with Plaintiff, Rosetti thanked Plaintiff for coming forward and assured Plaintiff that NEIU would conduct a complete and thorough investigation into the matter and then take all appropriate actions.  Rosetti concluded the meeting by hugging Plaintiff.

31.    Approximately one (1) week later, Plaintiff and Mrs. Medeiros met with David Reese ("Reese"), the former Director of NEIU's Human Resource Department, and Reese's successor, John Lawler ("Lawler"), and provided further detailed information about the abuses Wzorek had inflicted on students in the classroom.  Plaintiff and Mrs. Medeiros also disclosed to Reese and Lawler the identities of other potential witnesses, including parents, teachers, aides and Therapeutic Support Staff ("TSS") workers who worked in Wzorek's classroom.

32.    Approximately one (1) week later, in approximately mid-August, 2003, Plaintiff and Mrs. Medeiros were summoned by NEIU to attend another meeting to discuss Wzorek's classroom abuses, this time under the guise that they would be meeting with NEIU's full Board of Directors.

33.    Upon their arrival at NEIU for their fourth meeting to discuss Wzorek's abuses, Plaintiff and Mrs. Medeiros, still thinking that they had been summoned to appear before the full NEIU Board of Directors, found out instead that they would be meeting only with Rosetti and NEIU's attorney, Jeffrey Tucker, Esq. ("Tucker").

34.    After briefly introducing Tucker, Rosetti left the meeting and retreated to his adjacent office, which is surrounded by glass walls, while Tucker met privately with Plaintiff and Mrs. Medeiros, albeit under the watchful eye of Rosetti.

35.    During the course of that meeting, Tucker attempted to convince Plaintiff and Mrs. Medeiros that there was a difference between "child abuse" and "student abuse" and that it was solely up to NEIU to decide whether the abuses they had witnessed Wzorek inflict on autistic children in the classroom needed to be reported to law enforcement authorities.  Tucker also represented to Plaintiff and Mrs. Medeiros that they did not have a right to know the results of NEIU's investigation into Wzorek's abuses, or whether NEIU even intended to take any formal or informal actions as a result thereof.  In an unethical and blatantly false attempt to intimidate Plaintiff and Mrs. Medeiros, and cover up Wzorek's abusive misconduct,  Tucker directed them, in no uncertain terms, that they were "to keep [their] mouths shut" about Wzorek's abuses.

36.    Plaintiff and Mrs. Medeiros left their meeting with Tucker with the distinct impression that they would be fired if they reported Wzorek's classroom abuses to any other person or entity.  Nevertheless, Plaintiff and Mrs. Medeiros remained under the impression that NEIU would, in fact, conduct a thorough investigation into Wzorek's abuses and would take the appropriate action(s) based

upon the results of that investigation including, <u>inter</u> <u>alia</u>, reporting Wzorek's abuses to the appropriate law enforcement authorities.

**C.    Defendants Retaliate Against Plaintiff For Reporting Wzorek's Abuses.**

37.    After learning that Plaintiff and Mrs. Medeiros had reported her classroom abuses to NEIU's Administration, Wzorek literally ran up and down the halls at CSE, from classroom to classroom, in a full rage, screaming that she had been falsely accused by Plaintiff and Mrs. Medeiros.  In the process, Wzorek uttered other false and defamatory remarks about Plaintiff and Mrs. Medeiros in a deliberate attempt to undermine their credibility.  Unfortunately, as detailed below, the CSE teachers and staff, more concerned about loyalty to Wzorek than they were with the safety and well-being of the autistic children under her care, became willing participants in a concerted scheme to intimidate, harass and discriminate against Plaintiff and Mrs. Medeiros as punishment for reporting Wzorek's classroom abuses.

38.    On August 22, 2003, during NEIU's annual in-service meeting, Plaintiff and Mrs. Medeiros were advised by Reese that NEIU had "completed" its investigation, even though, Plaintiff and Mrs. Medeiros later found out, no meaningful "investigation" was ever conducted by NEIU since many parents, aides and TSS workers that had knowledge critical to such an "investigation" were never even contacted by NEIU.

39.    At that time, Plaintiff and Mrs. Medeiros were advised that Wzorek's classroom abuses would not be reported to law enforcement authorities.  Instead, as a result of its sham "investigation," NEIU had decided to transfer Wzorek to another school district where she would continue to have direct contact with special needs students.

40.    Throughout the remainder of the August 22, 2003 in-service, Plaintiff and Mrs. Medeiros, who had always been on good terms with NEIU's administrators, co-workers and staff, were completely shunned by nearly everyone in attendance.  They were also subjected to insults, sneers, dirty looks and sarcastic remarks as if they, as opposed to Wzorek, had done something wrong.  Indeed, Rachowski openly castigated another NEIU Assistant for even speaking to Plaintiff at the August 22, 2003 in-service, calling Plaintiff a liar and a troublemaker.

41.    Moreover, as soon as Plaintiff and Mrs. Medeiros reported to work at CSE in early September, 2003, they received noticeably different treatment by the CSE teachers and staff, with whom they had also previously enjoyed good and positive relationships.  Mirroring the unfair and cruel treatment Plaintiff and Mrs. Medeiros received from their NEIU co-workers at the August 22, 2003 NEIU in-service, the CSE teachers and staff, led by Bartz and Unoski and fully supported by Defendant Sluko, CSE's Principal, treated Plaintiff and Mrs. Medeiros with utter disdain and disgust from the very beginning of the 2003-04 school session,

14

repeatedly subjecting them to ridicule, insults, sarcasm and dirty looks. CSE teachers and staff even went so far as to either walk out or turn their backs on Plaintiff or Mrs. Medeiros when they walked into the teachers' lounge, making sure Plaintiff and Mrs. Medeiros knew that they were no longer welcomed in the CSE community.

42.    In addition, although Plaintiff and Mrs. Medeiros were requested by Wzorek's replacement, Mari Gower, to accompany NEIU students from her classroom to CSE's cafeteria for lunch, when they attempted to do so they were advised that Sluko, CSE's principal, refused to allow Plaintiff or Mrs. Medeiros in the school's cafeteria.

43.    Further, throughout the 2003-04 school year, Plaintiff and Mrs. Medeiros were not invited to holiday events and parties conducted on CSE property, notwithstanding the fact that they had always been invited to such events in the past and all other NEIU teachers and aides who worked at CSE continued to be invited to such activities throughout the entire 2003-04 school year. In fact, their names were actually taken off the sign-up lists that were circulated among CSE and NEIU teachers, aides and staff before each such function on school property.

44.    As an additional punishment for reporting Wzorek's criminal abuses, Plaintiff and Mrs. Medeiros were forced to work longer hours than any of their NEIU counterparts throughout the 2003-04 school year.

45.    Unoskie, a third grade teacher at CSE, was one of the primary antagonists behind the collaborative effort to punish Plaintiff and Mrs. Medeiros for "blowing the whistle" on Wzorek.  To this end, Unoski repeatedly subjected Plaintiff and Mrs. Medeiros to dirty looks, insults and disparaging remarks throughout the 2003-04 school year.  On one occasion, Unoski stopped Lemanna in the hallway and, in front of other co-workers, falsely accused Plaintiff and Mrs. Medeiros of being liars who concocted the whole story about Wzorek's abuses of autistic and helpless students.  Unoski continued to stoke the fires against Plaintiffs and Mrs. Medeiros throughout the 2003-04 school year by enlisting other CSE teachers and staff to tarnish their reputations in the community and punish them for blowing the whistle on Wzorek.

46.    Furthermore, O'Hora also repeatedly harassed and insulted Plaintiff and Mrs. Medeiros in the presence of others, often times chastising others who even attempted to talk to Plaintiff or Mrs. Medeiros because, he claimed, they were untrustworthy.  During the 2002-03 school year, O'Hora also refused to allow either Plaintiff or Mrs. Medeiros to accompany NEIU students from their classroom to the bathroom facilities in his NEIU classroom -- which they had

always done prior to reporting Wzorek's abuses -- claiming that he had been told by his "higher ups" that he was to "keep his distance" and "stay completely away from [Plaintiff and Mrs. Medeiros]."

**D.    Defendants' Retaliation Against Plaintiff Causes Repeated Violations Of Students' IEP's.**

47.    When Plaintiff and Mrs. Medeiros returned to the classroom in September, 2003, they were advised by Sluko, Bartz and Lemanna that they were no longer allowed to accompany special needs students from their NEIU classroom into mainstream classrooms at CSE -- one of their regular responsibilities prior to reporting Wzorek's abuses.  Instead, at additional taxpayer expense, TSS workers were hired to perform these functions that Plaintiff and Mrs. Medeiros had traditionally performed and remained ready, willing and able to continue performing.

48.    In late September, 2003, Plaintiff and Mrs. Medeiros approached Lemanna and inquired as to why they were no longer allowed to accompany students into mainstream classrooms.  In response, Lemanna advised Plaintiff and Mrs. Medeiros that the CSE teachers and administrators, including Bartz and Sluko, did not want them in CSE's mainstream classrooms and that NEIU had decided to abide by these wishes.  During that same meeting, Lemanna urged Plaintiff and Mrs. Medeiros to voluntarily agree to be transferred to another school district.  Knowing that they had done nothing wrong, Plaintiff and Mrs. Medeiros

refused to agree to a voluntary transfer, whereupon Lemanna remarked that such a transfer may nevertheless be ordered because Plaintiff and Mrs. Medeiros "were now hurting the kids."

49.    Plaintiff and Mrs. Medeiros thereafter approached Sluko in early October, 2003 to discuss why they were not being allowed to accompany students into mainstream classrooms at CSE.  During the course of that meeting, Sluko told Plaintiff and Mrs. Medeiros, inter alia, that she was astonished that they still worked in her building, that none of the CSE teachers or staff wanted them anywhere near CSE, that she received complaints about them everyday from the CSE teachers and staff and that their mere presence at CSE was adversely affecting the morale of the CSE teachers and staff.

50.    During that same meeting, Sluko also accused Plaintiff and Mrs. Medeiros of breaking a silent code, which she likened to a code among police officers and priests, when they "blew the whistle" on Wzorek.

51.    Sluko also confirmed during that meeting that Bartz, a CSE kindergarten teacher who was required by law to allow NEIU students into her classroom as part of their IEPs, absolutely refused to allow either Plaintiff or Mrs. Medeiros to accompany these students in her class and that she, Sluko, supported Bartz's position.

52.    Sluko ended the October, 2003 meeting with Plaintiff and Mrs. Medeiros by forewarning them that she was considering approaching Dr. Arnold, the Abington Heights Superintendent, and requesting that Abington Heights take formal action to prevent Plaintiff and Mrs. Medeiros from working at CSE or anywhere else within the District.

53.    In the meantime, as a result of the refusal of Sluko and Bartz to allow Plaintiff and Mrs. Medeiros to accompany students into the classroom, and NEIU's support of that improper directive, there were multiple occasions during the 2003-04 school year when students' IEP's were knowingly violated by CSE teachers because a TSS worker was not available to take autistic students into mainstream classrooms and Plaintiff and Mrs. Medeiros were not allowed to do so.

54.    Plaintiff and Mrs. Medeiros repeatedly reported these IEP violations to both CSE and NEIU, all to no avail.  Despite these protestations by Plaintiff and Mrs. Medeiros, no corrective action was ever taken during the entire 2003-04 school year to ensure that the retaliatory efforts of CSE and NEIU administrators, teachers and staff did not interfere with many students' federally protected educational rights and needs.

**E.    Plaintiff Cooperates In The Lackawanna County District Attorney's Investigation Into Wzorek's Classroom Abuses.**

55.    In the meantime, even though NEIU refused to report Wzorek's student abuses to law enforcement authorities and categorically instructed Plaintiff

and Mrs. Medeiros not to do so, a parent of one of the abused students did go to the authorities and requested that a formal investigation into this matter be conducted.

56.    In the late Fall of 2003, Plaintiff and Mrs. Medeiros were contacted by a representative of the Lackawanna County District Attorney's Office and asked if they would assist that office's investigation into Wzorek's student abuses. Notwithstanding NEIU's and Tucker's express directions to shield Wzorek's abuses from further scrutiny, Plaintiff and Mrs. Medeiros agreed to cooperate with the District Attorney's criminal investigation.  To that end, Plaintiff and Mrs. Medeiros met with members of the District Attorney's office on multiple occasions throughout the 2003-04 school year and supplied that office, as they had earlier supplied to NEIU, with detailed information concerning the multiple acts of abuses Wrozek had inflicted on autistic students.

57.    With the cooperation and assistance of Plaintiff and Mrs. Medeiros, the District Attorney's office conducted an extensive investigation which lasted several months and encompassed, inter alia, the seizure of documents and other physical evidence at both CSE and NEIU, as well as interviews of Wzorek, the parents of the abused students and multiple CSE and NEIU officials, teachers, aides and staff.

58.    As a result of the District Attorney's extensive investigation, Wzorek was arrested on August 17, 2004 and formally charged with multiple felony counts

of child endangerment.  As of the filing of this Complaint, these felony charges remain pending against Wzorek.

**F.    The Retaliation Against Plaintiff Intensifies.**

59.    As the District Attorney's investigation into Wzorek's abuses expanded over the Winter of 2003 and Spring of 2004, and NEIU and Abington Heights teachers, administrators and staff, including the Individual Defendants, were interviewed by the District Attorney's office, the verbal, psychological and emotional harassment of Plaintiff and Mrs. Medeiros intensified and escalated.  As a result, Plaintiff and Mrs. Medeiros, who by then were each already under a doctor's care and forced to take prescription medication to cope with the constant bouts of depression they endured as they were completely shunned and ostracized by their co-workers and former friends, were forced on multiple occasions to take unpaid days off from work simply because they could not take another day of insults and ridicule by CSE and NEIU employees.

60.    Plaintiff and Mrs. Medeiros repeatedly advised NEIU officials of the harassment, ridicule and discriminating treatment they were receiving at the hands of CSE and NEIU workers, but no action was taken to curb this concerted mistreatment.  Indeed, as Plaintiff's and Mrs. Medeiros' plight worsened, Lemanna again attempted in May, 2004 to force Plaintiff and Mrs. Medeiros to accept a voluntary transfer to another school district.  When Plaintiff and Mrs. Medeiros

again refused, Lemanna remarked, "[f]ine then, we'll take the whole classroom out of Abington Heights."

61.     As forewarned by both Sluko and Lemanna, Plaintiff and Mrs. Medeiros were advised during NEIU's annual in-service on August 20, 2004, just three (3) days after Wzorek's well-publicized arrest, that their NEIU classroom had been taken out of Abington Heights School District and that they would now be working at the John Adams School in the Scranton School District.

62.     Upon information and belief, Dr. Arnold, in his capacity as the Superintendent and a policymaker for Abington Heights, and acting pursuant to pressure he received from Sluko and CSE teachers, made the decision to move Plaintiff's NEIU classroom out of the Abington Heights School District.

63.     Upon further information and belief, NEIU, acting through its policymaker, Rosetti, therafter approved the transfer of Plaintiff's NEIU classroom out of Abington Heights.

64.     The aforementioned decision to move Plaintiff's NEIU classroom to a different school district needlessly disrupted the daily routines of innocent autistic students, who have a heightened need for stability and routine, and has caused great disruption and inconvenience to their families.  To this end, the students in the NEIU classroom in which Plaintiff and Mrs. Medeiros work are not only surrounded by unfamiliar faces in an unfamiliar setting but they are no longer

allowed to have outdoor play or use the gym -- activities which used to be a part of their daily routines at CSE. These students, who are also now forced to adhere to a different dress code than Abington Heights, have already shown signs of regression as a result of Abington Heights' and NEIU's petulant and retaliatory decisions.

65.    The foregoing actions have also caused great inconvenience and additional expense to Plaintiff and Mrs. Medeiros, who are now also forced to adhere to a different dress code than they had at CSE and must travel further distances with different traffic patterns than they were used to when they worked at CSE, all to Plaintiff's detriment and loss.

66.    At all times relevant hereto, Plaintiff performed her job duties in a satisfactory manner and received satisfactory evaluations from her superiors at NEIU.

67.    Nevertheless, the above-described retaliation, harassment, intimidation and adverse changes in Plaintiff's employment, which persisted and intensified throughout the 2003-04 school year and culminated in Plaintiff's forced transfer to another school district for the 2004-05 school year, were intended to and have in fact inflicted severe economic, physical and emotional punishment on Plaintiff in retaliation for Plaintiff's involvement in reporting Wzorek's classroom abuses.

68.    At all times relevant hereto, Plaintiff acted in good faith and consistent with obligations imposed under the Pennsylvania Child Protective Services Act, 23 Pa. C.S.A.002 §§6301 et seq. by reporting Wzorek's classroom abuses to NEIU and assisting in the Lackawanna County District Attorney's criminal investigation of said abuses.   Indeed, Wrozek's abuses violated both criminal statutes and a code of conduct which is clearly designed to protect and promote the public interest.

## COUNT I
## PLAINTIFF v. THE INDIVIDUAL DEFENDANTS
## (42 U.S.C. § 1983)

69.    The preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

70.    As set forth more fully above, Plaintiff reported to both NEIU and, later, the Lackawanna County District Attorney's office the aforementioned abuses and improprieties she observed being inflicted upon autistic students by Wzorek.

71.    Plaintiff's communications with NEIU and the Lackawanna County District Attorney's office involved a matter of public concern which is protected speech under the First Amendment to the United States Constitution.

72.    Plaintiff's right to engage in such protected speech under the First Amendment was clearly established at all times relevant to this Complaint.

73.    However, in direct response to Plaintiff's protected communications and concerns, and as a means of oppressing and suppressing Plaintiff's exercise of her First Amendment rights, the Individual Defendants engaged in a campaign of retaliation against Plaintiff in the manners outlined in detail above.

74.    At all times relevant to the Individual Defendants' retaliation campaign against Plaintiff, the Individual Defendants acted in their individual capacities and under color of state law.

75.    Moreover, at all times relevant hereto, the Individual Defendants' actions were willful, wanton, malicious and taken with a reckless or callous disregard for Plaintiff's federally protected rights under the First Amendment.

76.    As a direct and proximate result of the Individual Defendants' retaliatory misconduct, Plaintiff has sustained economic losses and has suffered, and continues to suffer from, humiliation, intimidation, damage to her reputation and discriminatory working conditions, as well as severe mental pain and suffering, emotional distress, depression, nervousness, sleeplessness, irritability and anxiety for which Plaintiff was required to seek medical treatment.

WHEREFORE, Plaintiff Jill Celli demands judgment on this Count in her favor and against the Defendants, Fred Rosetti, Ed.D., Clarence Lemanna, Ed.D., Susan Wzorek, James O'Hora, Kathleen Rachowski, David Arnold, Ed.D., Mariellen Sluko, Mary Alice Bartz and Barbara Unoski, jointly and/or severally,

for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees and such other and further relief to which this Court deems just and proper.

## COUNT II
## PLAINTIFF v. NEIU AND ABINGTON HEIGHTS
## (VIOLATION OF 42 U.S.C. §1983)

77.    The preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

78.    As set forth more fully above, Plaintiff informed both NEIU and, later, the Lackawanna County District Attorney's office of the abuses and improprieties she observed being inflicted upon autistic students by Wzorek.

79.    Plaintiff's communications with Defendant NEIU and the Lackawanna County District Attorney's office involved a matter of public concern which is protected speech under the First Amendment to the United States Constitution.

80.    Plaintiff's right to engage in such protected speech under the First Amendment was clearly established at all times relevant to this Complaint.

81.    However, in direct response to Plaintiff's protected communications and concerns, and as a means of oppressing and suppressing Plaintiff's exercise of their First Amendment rights, NEIU, acting through its policymaker, Rosetti, and Abington Heights, acting through its policymaker, Dr. Arnold, retaliated against Plaintiff in the manners outlined in detail above.

82.    At all times relevant to their retaliation against Plaintiff, NEIU and Abington Heights, through their aforesaid respective policymakers, acted under color of state law.

83.    As a direct and proximate result of NEIU's and Abington Heights' retaliation against Plaintiff, through their aforesaid respective policymakers, Plaintiff has sustained economic losses and has suffered, and continues to suffer from, humiliation, intimidation, damage to her reputation and discriminatory working conditions, as well as severe mental pain and suffering, emotional distress, depression, nervousness, sleeplessness, irritability and anxiety for which Plaintiff was required to seek medical treatment.

WHEREFORE, Plaintiff Jill Celli demands judgment on this Count in her favor and against NEIU and Abington Heights, jointly and/or severally, for compensatory damages, together with interest, cost of suit, attorneys' fees and such other and further relief to which this Court deems just and proper.

**COUNT III**
**PLAINTIFF v. INDIVIDUAL DEFENDANTS**
**(CONSPIRACY TO VIOLATE PLAINTIFF'S**
**CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. §1983)**

84.    The foregoing averments of this Complaint are incorporated by reference as if the same were set forth more fully herein.

85.    As set forth more fully in the above incorporated paragraphs, in direct response to Plaintiff's protected communications and concerns, and as a means of

oppressing and suppressing Plaintiff's exercise of her protected First Amendment rights to engage in free speech with respect to a matter of public concern, the Individual Defendants conspired with each other to retaliate against Plaintiff in the manners outlined in detail above.

86.    The above acts of the Individual Defendants constitute a wrongful combination or agreement to deprive Plaintiff of her rights to free speech under the First Amendment.

87.    At all times relevant to their conspiratorial conduct against Plaintiff, the Individual Defendants acted under color of state law.

88.    Moreover, at all times relevant hereto, the Individual Defendants' actions were willful, wanton, malicious and taken with a reckless or callous disregard for Plaintiff's federally protected rights under the First Amendment.

89.    As a direct and proximate result of the conspiratorial and retaliatory acts of the Individual Defendants, Plaintiff has sustained economic losses and has suffered, and continues to suffer from, humiliation, intimidation, damage to her reputation and discriminatory working conditions, as well as severe mental pain and suffering, emotional distress, depression, nervousness, sleeplessness, irritability and anxiety for which Plaintiff continues to seek medical treatment.

WHEREFORE, Plaintiff Jill Celli demands judgment on this Count in her favor and against Defendants Fred Rosetti, Ed.D., Clarence Lemanna, Ed.D.,

Susan Wzorek, James O'Hora, Kathleen Rachowski, David Arnold, Ed.D., Mariellen Sluko, Mary Alice Bartz and Barbara Unoski, jointly and/or severally, for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees and such other and further relief to which this Court deems just and proper.

**COUNT IV**
**PLAINTIFF v. NEIU**
**(VIOLATION OF PENNSYLVANIA WHISTLEBLOWER LAW)**

90.    The foregoing averments of this Complaint are incorporated by reference as if the same were set forth more fully herein.

91.    At all times relevant hereto, NEIU was Plaintiff's "employer."

92.    NEIU, through the actions of its agents and employees, who at all times were acting within the scope of their employment and with full knowledge of NEIU, violated the Pennsylvania Whistleblower Law, 43 Pa.C.S.A. §§ 1423 et seq., by, inter alia, threatening to and/or actually altering Plaintiff's compensation, terms, conditions, location and/or privilege of her employment and/or otherwise discriminating or retaliating against Plaintiff regarding the terms, conditions, location and/or privileges of her employment.

93.    All of the foregoing acts wrongfully occurred because Plaintiff reported to both the NEIU and the Lackawanna County District Attorney's office

the multiple instances of child abuse she had observed Wzorek inflict upon autistic children in her NEIU classroom at CSE.

94.    As a direct and proximate result of NEIU's aforementioned conduct in violating the Pennsylvania Whistleblower Law, Plaintiff has suffered such harm and continues to suffer such harm as has been previously described.

95.    The aforementioned acts of NEIU were willful, wanton, malicious, and taken with reckless and/or callous disregard for Plaintiff's rights and well-being.

WHEREFORE, Plaintiff Jill Celli demands judgment on this Count in her favor and against NEIU for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees and such other and further relief to which this Court deems appropriate.

## COUNT V
## PLAINTIFF v. DEFENDANTS WZOREK, O'HORA, RACHOWSKI, SLUKO, BARTZ AND UNOSKI
## (DEFAMATION)

96.    The foregoing allegations of this Complaint are incorporated by reference as if the same were set forth more fully herein.

97.    Plaintiff, at all times herein mentioned, has been a person of good name and reputation and was deservedly enjoying the esteem and good opinion of diverse persons, especially in the local educational community.

98.    As set forth more fully above, however, Defendants Wzorek, O'Hora, Rachowski, Sluko, Bartz and Unoski, in retaliation for Plaintiff's involvement in exposing Defendant Wzorek's classroom abuses, have falsely maligned Plaintiff and damaged Plaintiff's good name and reputation in the local educational community by calling Plaintiff a, inter alia, liar and troublemaker who falsely accused Wzorek of classroom abuses.  These false statements were communicated to, inter alia, multiple NEIU and Abington Heights administrators, teachers, aides and staff.

99.    At the time they uttered the foregoing defamatory remarks about Plaintiff, Defendants Wrozek, O'Hora, Rachowski, Sluko, Bartz and Unoski knew or should have known that said remarks were false.

100.    As a result of the foregoing slanderous misconduct of the Individual Defendants named in this Count, Plaintiff has suffered, and continues to suffer, injury to her good name and reputation in the local educational community, all to Plaintiff's loss and detriment.

101.    The aforementioned acts of the above-named Defendants were willful, wanton, malicious, and taken with reckless and/or callous disregard for Plaintiff's rights and well-being.

WHEREFORE, Plaintiff Jill Celli demands judgment on this Count in her favor and against Defendants, Susan Wzorek, James O'Hora, Kathleen Rachowski,

Mariellen Sluko, Mary Alice Bartz and Barbara Unoski, jointly and/or severally, for compensatory and punitive damages, together with interest, cost of suit and such other and further relief to which this Court deems just and proper.

**COUNT VI**
**PLAINTIFF v. INDIVIDUAL DEFENDANTS**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

102.   The foregoing allegations of this Complaint are incorporated by reference as if the same were set forth more fully herein.

103.   As set forth more fully above, Individual Defendants knowingly engaged in a campaign of outrageous conduct that was so extreme as to go beyond all bounds of decency and intentionally and recklessly caused severe emotional distress and injuries to Plaintiff.

104.   Moreover, Individual Defendants knew, or acted with malicious intent and in reckless disregard of the fact, that they were certain that their unlawful conduct would produce severe emotional distress in Plaintiff.

105.   As a direct and proximate result of the foregoing intentional acts of Individual Defendants, Plaintiff has been required to seek medical attention and has suffered such harm, and continues to suffer such harm, as has been previously described.

106.  The aforementioned acts of Individual Defendants were willful, wanton, malicious and taken with reckless and/or callous disregard for Plaintiff's rights and well-being.

WHEREFORE, Plaintiff Jill Celli demands judgment on this Count in her favor and against Individual Defendants Fred Rosetti, Ed.D., Clarence Lemanna, Ed.D., Susan Wzorek, James O'Hora, Kathleen Rachowski, David Arnold, Ed.D., Mariellen Sluko, Mary Alice Bartz and Barbara Unoski, jointly and severally, for compensatory and punitive damages, together with interest, cost of suit and such other and further relief to which this Court deems just and proper.

## COUNT VII
## PLAINTIFFS v. INDIVIDUAL DEFENDANTS
## (CIVIL CONSPIRACY)

107.  The foregoing allegations of this Complaint are incorporated by reference as if the same were set forth more fully herein.

108.  As articulated more fully above, Individual Defendants unlawfully conspired and agreed to falsely malign Plaintiff's character and reputation and to cause Plaintiff emotional harm and to retaliate against Plaintiff for "blowing the whistle" on Wzorek.

109.  The above-referenced acts of the Individual Defendants constitute a wrongful combination or agreement to do unlawful acts or, alternatively, a

wrongful combination or agreement to do otherwise lawful acts by unlawful means.

110. As a direct and proximate result of Individual Defendants' conspiracy, Plaintiff has suffered, and continues to suffer, substantial injuries and damages as described above.

111. The aforementioned acts of Individual Defendants were willful, wanton, malicious and taken with reckless and/or callous disregard for Plaintiff's rights and well-being.

WHEREFORE, Plaintiff Jill Celli demands judgment on this Count in her favor and against Individual Defendants Fred Rosetti, Ed.D., Clarence Lemanna, Ed.D., Susan Wzorek, James O'Hora, Kathleen Rachowski, David Arnold, Ed.D., Mariellen Sluko, Mary Alice Bartz and Barbara Unoski, jointly and severally, for compensatory and punitive damages, together with interest, cost of suit and such other and further relief to which this Court deems just and proper.

**Respectfully submitted,**

s/  Kevin C. Quinn
Kevin C. Quinn
Frank J. Tunis

**WRIGHT & REIHNER, P.C.**
148 Adams Avenue
Scranton, PA  18503
(570) 961-1166
(570)961-1199 fax

Attorneys for Plaintiff

DATED:    October 14, 2004