# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JILL CELLI,                                   :
                                              :
        Plaintiff,                  :          No. 3:04-CV-02262
                                              :
                                              :
        v.                          :
                                              :          JURY TRIAL DEMANDED
NORTHEASTERN EDUCATIONAL :
INTERMEDIATE UNIT 19,                         :
FRED R. ROSETTI, Ed.D.,                       :
CLARENCE LEMANNA, Ed.D.,                      :
SUSAN WZOREK, JAMES O'HORA,:
KATHLEEN RACHOWSKI,                           :
THE SCHOOL DISTRICT OF                        :          (Judge Caputo)
ABINGTON HEIGHTS, DAVID                       :
ARNOLD, Ed.D., MARIELLEN                      :
SLUKO, MARY ALICE BARTZ                       :
and BARBARA URNOSKIE,                         :
                                              :          (ELECTRONICALLY FILED)
        Defendants.                 :

---

## SUPPLEMENTAL APPENDIX OF EXHIBITS IN SUPPORT OF PLAINTIFF'S REPLY BRIEF IN SUPPORT OF <u>MOTION FOR COUNSEL FEES AND LITIGATION COSTS</u>

Joseph T. Wright, Jr.
Pa. I.D. No. 32690
Kevin C. Quinn
Pa. I.D. No. 53625
**WRIGHT & REIHNER, P.C.**
148 Adams Avenue
Scranton, Pennsylvania 18503
(570) 961-1166

Attorney for Plaintiff

DATED:     January 20, 2006

Exhibit 1          Declaration of Kevin C. Quinn, Esq.

Exhibit 2          Declaration of Jill Celli

Exhibit 3          Declaration of Robin Mederios


Respectfully submitted:


_____/s/ Kevin C. Quinn_____
Joseph T. Wright, Jr.
Pa. I.D. No. 32690
Kevin C. Quinn
Pa. I.D. No. 53625
Frank J. Tunis, Jr.
Pa. I.D. No. 84264
**WRIGHT & REIHNER, P.C.**
148 Adams Avenue
Scranton, Pennsylvania 18503
(570) 961-1166

Attorney for Plaintiff

DATED:    January 20, 2006

2

## CERTIFICATE OF SERVICE

I, KEVIN C. QUINN, hereby certify that I have caused to be served on this day, a true and correct copy of the foregoing Appendix of Exhibits upon counsel of record via electronic filing as follows:

Robin B. Snyder, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
401 Adams Avenue - Suite 400
Scranton, PA  18510
rsnyder@mdwcg.com

John E. Freund, III, Esquire
King, Spry, Herman, Freund & Faul, LLC
One West Broad Street - Suite 700
Bethlehem, PA  18018
jef@kingspry.com

Richard Polachek, Esquire
Polachek & Associates, P.C.
22 East Union Street - Suite 400
Wilkes-Barre, PA  18701
polacheklaw@epix.net


_____/s/ Kevin C. Quinn_____
Kevin C. Quinn


DATED:   January 20, 2006

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JILL CELLI,                              :
                                         :
      Plaintiff,                 :        No. 3:04-CV-02262
                                         :
      v.                         :
                                         :        JURY TRIAL DEMANDED
NORTHEASTERN EDUCATIONAL :
INTERMEDIATE UNIT 19,                    :
FRED R. ROSETTI, Ed.D.,                  :
CLARENCE LEMANNA, Ed.D.,                 :
SUSAN WZOREK, JAMES O'HORA,:
KATHLEEN RACHOWSKI,                      :
THE SCHOOL DISTRICT OF                   :        (Judge Caputo)
ABINGTON HEIGHTS, DAVID                  :
ARNOLD, Ed.D., MARIELLEN                 :
SLUKO, MARY ALICE BARTZ                  :
and BARBARA URNOSKIE,                    :
                                         :        (ELECTRONICALLY FILED)
      Defendants.                :

## DECLARATION OF KEVIN C. QUINN, ESQ.

I, Kevin C. Quinn, hereby declare under penalty of perjury as follows:

1.    I am a member in good standing with the Bar of the Commonwealth of Pennsylvania and in all courts in which I have been admitted to practice. I was admitted to the practice of law in 1988.

2.    I am a member of Wright & Reihner, P.C., a Scranton law firm formed in July, 2004 and comprised of seven attorneys.

3.    Prior to the formation of Wright & Reihner, P.C., I was a Shareholder in the Scranton Office of Elliott, Reihner and Siedzikowski, P.C., (the "Elliott firm"). I worked with the Elliott firm from 1992 until July 2004. Prior to joining the Elliott firm, I was an Associate in the Scranton office of Dilworth, Paxson, Kalish & Kauffman (the "Dilworth firm"). I worked with the Dilworth firm from 1988 until 1992.

4.    For the past 17 years, I have been involved with the establishment of my firm's billing practices and have been responsible for reviewing my firm's invoices and billing my clients for legal services rendered on their behalf.

5.    Each month, Wright & Reihner billing attorneys are provided drafts of their respective clients' bills. The billing attorneys review the draft bills for accuracy and exercise their billing judgment to adjust and finalize client bills each month. This practice is similar to the billing practices I followed while I worked with the Elliott and Dilworth firms.

6.    Wright & Reihner requires its attorneys to maintain contemporaneous time sheets which are then input into the firm's billing program to generate billing invoices. That process was followed in the above matter.

2

7.    From the inception of the above captioned action, I have been the responsible billing attorney in this case. I have, at all times, attempted to staff this litigation in an efficient manner in light of the needs of the litigation and my law firm's available resources.

8.    Although Wright & Reihner currently employs a paralegal, she works almost exclusively with two other attorneys in our firm and primarily handles personal injury claims. Accordingly, our paralegal was unable to assist me in this matter.

9.    Wright & Reihner also employs one junior attorney, Frank Tunis, Esq., who did assist me in the handling of this case when his time permitted. Attorney Tunis handled much of the preliminary legal research and drafting of both Plaintiff's Complaint and Plaintiff's successful Brief in opposition to the Abington Defendants' Rule 12(b)(6) Motion to Dismiss the Complaint. Although I conducted additional, supplemental research on both projects, and reviewed, revised and finalized the draft pleadings prepared by Attorney Tunis, my supplemental efforts complimented Attorney Tunis' work and, in no way, shape or form, duplicated same.

3

10.    The legal research performed by Attorney Tunis and I in this case was, in my considered judgment, absolutely essential to the success of this case. To this end, this case presented novel and somewhat complex legal claims under, inter alia, 42 U.S.C. § 1983 and the Pennsylvania Whistleblower Law. The legal research Attorney Tunis and I performed was essential to, inter alia, the proper formation of Plaintiff's claims; defeating the Abington Defendants' Motion to Dismiss the Complaint; successfully striking the supplemental arguments the Abington Defendants inappropriately attempted to raise, for the first time, in their Reply Brief in support of their Motion to Dismiss; Plaintiff's successful Motion for Leave to File an Amended Complaint; and numerous discovery disputes which arose during the course of this litigation.

11.    In order for Attorney Tunis and I to effectively coordinate our efforts, as well as discuss the overall case strategy, it was also necessary that we confer with one another on a regular basis. This is a practice that I have engaged in, almost daily, since I first began practicing law in 1988.

12.    Contrary to Defendants' contentions, practically every fee paying client I have worked for since I first began practicing law has acknowledged the importance of inter-office communications and has agreed to pay for same.

13.    Prior to the submission of my firm's Invoice on December 9, 2005 in this case, I reviewed that Invoice to ensure that the entries were accurate. Having

4

performed such an exercise, I can assure the Court that my firm's Invoice does not reflect excessive, duplicative entries and that the hours and efforts reflected on that Invoice, including the hours expended for, inter alia, drafting the Complaint, responding to the Abington Defendants' Motion to Dismiss the Complaint, preparing Plaintiff's detailed Rule 26 Disclosures and related discovery responses and preparing the Joint Case Management Plan and for the case management conference conducted by this Court – at which the Court requested oral argument on the Abington Defendants' Motion to Dismiss the Complaint – were both reasonable and necessary in this case.

14.    I can also assure the Court that the expenses reflected in our firm's Invoice, including computerized legal research and photocopy charges, for which Plaintiff currently seeks reimbursement from Defendants, were:    (1) actually incurred and/or expended by Wright & Reihner; (b) were necessary and essential to this case; and (3) are of the same type and nature that Wright & Reihner regularly charges its fee paying clients.

15.    Although defense counsel's billing experiences may be different, the expenses for which Plaintiff instantly seeks reimbursement from Defendants, including charges for photocopies and computerized legal research, are not typically included as "overhead" for Wright & Reihner's fee paying clients. Indeed, the American Bar Association's ("ABA's") suggested client engagement

5

letters for both hourly and contingent fee cases expressly identifies such charges as items for which the client should bear ultimate responsibility rather than being included in "overhead." (See ABA sample engagement letters, taken from the ABA's The Essential Formbook (2000), collective attached hereto collectively as Exhibit 1.)

16.    The computerized legal research charges reflected on our Invoice in this matter reflects research that was performed to, inter alia:  investigate the potential claims to be brought against Defendants; to ensure that Plaintiff's Complaint met the pleading requirements for the claims brought; to formulate the appropriate legal arguments to raise in opposition to the Abington Defendants' Motion to Dismiss the Complaint; and to formulate the appropriate legal arguments to raise in support of Plaintiff's successful Motion for Leave to file an Amended Complaint.  The timing of the incurrence of these computerized legal research charges, as reflected on our Invoice, corresponds with the actual performance of these tasks.

17.    The photocopy charges for which Plaintiff seeks reimbursement include, inter alia, the duplication of pleadings (including the Complaint) that needed to be served on each Defendant; the production of Plaintiff's Rule 26 Disclosure materials; Plaintiff's responses to Defendants' written discovery requests; the preparation of a mediation packet for the Court-appointed Mediator,

6

Raymond Wendolowski; the copying of documents reviewed and/or used in connection with depositions and court conferences; and the copying of the documents submitted in opposition to the Abington Defendants' Motion to Dismiss the Complaint and in support of Plaintiff's successful Motion for Leave to File an Amended Complaint. As is the case with my firm's computerized legal research charges, the timing of the photocopy charges reflected on our Invoice corresponds with the underlying event(s) which triggered those charges.

18.    In addition, the photocopy charge of $.15/page reflected on our Invoice is the standard rate Wright & Reihner currently charges its fee paying clients.

19.    Although this action and the companion case of <u>Mederios v. NEIU</u>, et al., No. 04-2263, arise out of the same core set of operative facts, and therefore involve similar claims and legal issues, Mrs. Mederios and Ms. Celli specifically requested from the outset that their lawsuits be filed separately in the event that, during the course of the litigations, they did not agree on a particular strategy, such as, for instance, whether to settle if a meaningful offer was made or whether to instead insist upon a trial on the merits.

20.    Because most of the efforts of Wright & Reihner attorneys, in the <u>Celli</u> and <u>Mederios</u> matters, as well as the expenses incurred by Wright & Reihner, in those cases, equally benefited both cases, the time spent and expenses incurred

7

in connection with any effort that benefited both cases was divided equally between this case and the Mederios case. Thus, by way of example, if a particular task that benefited both cases took four (4) hours to perform, two (2) hours were charged to this case and two (2) hours were charged to the Mederios case. Similarly, all litigation expenses that benefited both cases were equally divided among this case and the Mederios case.

21.    Thus, the attorneys' fees and litigation costs Plaintiff instantly seeks to recoup from Defendants in this case in no way duplicates the attorneys' fees and costs requested by Mrs. Mederios in her companion case.

22.    Finally, attached hereto as Exhibit 2 is a true and correct copy of my firm's current Invoice in this matter.  In addition to the fees and expenses originally requested in Plaintiff's Motion, the attached Invoice reflects that, taking into account the additional fees and expenses Plaintiff has incurred in connection with the filing of Plaintiff's instant Motion, through the filing of Plaintiff's accompanying Reply Brief, the total fees currently requested by Plaintiff is $69,480.00 and the total expense reimbursement currently sought by Plaintiff is $2,912.00, for a total recovery sought, through January 20, 2005, of $72,392.00.

8

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of January, 2006.

_____
Kevin C. Quinn
Wright & Reihner, P.C.

9

# EXHIBIT 1

**FORM 1**
**COMPREHENSIVE HOURLY FEE ENGAGEMENT LETTER**

[Letterhead]

[Date]

[Client's Name]
[Client's Address]

Dear [Client's Name]:

It was a pleasure meeting with you yesterday to discuss [Client's Name] engagement of [Law Firm Name] to provide professional services. I would like to thank you for selecting [Law Firm Name] to handle your matter.

The purpose of this letter is to set forth the terms upon which [Law Firm Name] agrees to represent [Client's Name], in order to establish and maintain a mutual understanding of the goals and respective responsibilities of [Law Firm Name] and [Client's Name].

<u>SCOPE OF SERVICES</u>

[Client's Name] has engaged [Law Firm Name] to represent it in connection with [*express in as much detail as possible the exact description of the matter and the nature of the services to be provided*].

(As we have discussed, this engagement letter does not encompass, nor does it engage [Law Firm Name] to represent [Client's Name] in any matter not described above. In particular, this letter does not include [*express in as much detail as possible any possible matters, such as appeals, representation in other transactions, representations of subsidiaries, etc., which would be the subject of a separate engagement for any reason.*])

It is understood that [Law Firm Name] will not settle, negotiate, or compromise this matter without [Client's Name]'s written consent.

<u>POSSIBLE CONFLICTS OF INTEREST</u>

*Example 1:* As we discussed, [Law Firm Name] will not be representing [Client's Subsidiary's Name] in this matter because of potential attorney/client privilege and conflict-of-interest concerns. I have advised [Client's Subsidiary's Name], by letter dated [date], that [Law Firm Name] cannot represent it and that [Client's Subsidiary's Name], is responsible for retaining separate counsel to repre-

sent it. [*Include conflict-of-interest acknowledgment at end of letter, above countersignature line.*]

*Example 2:* As we discussed, [Law Firm Name] will represent only [Client's Name] [the entity (Client)] and not any of its [shareholders/partners] individually, because of the differing individual interests of each of the [shareholders/partners] in the matter. By separate letter to each of the [shareholders/partners], I have advised them of this limitation upon our engagement, and that each of them should consult or engage their own separate counsel to advise them regarding any aspect of the matter where they perceive that their individual interests may diverge from either [Client's Name]'s interests or of the other [shareholders/partners]. [*Include conflict-of-interest acknowledgment at end of letter, above countersignature line.*]

*Optional, but highly recommended:*

GENERAL MATTER/TRANSACTION/LITIGATION INFORMATION

In order to take away the mystery from the process of representing [Client's Name] in this [matter], it may assist if I explain in some detail, how [matter] is [handled/likely to progress] and what you can expect during this engagement.

*E.g.,* a lawsuit is commenced by the service and filing of a Summons and Complaint. The Complaint recites facts upon which the Plaintiff asserts liability against the Defendant. In this case, [Plaintiffs] are alleging that [Client's Name] terminated their employment exclusively on the basis of age. [Client's Name] as the Defendant then ha(ve)(s) a limited number of days in which to serve and file an answer that typically denies the claims asserted in the Complaint.

Both the Plaintiff(s) and Defendant(s) are afforded a limited period of time called "discovery," during which they investigate the strengths and weaknesses of each other's claims. Written questions called "interrogatories" are frequently exchanged that require written responses about the facts and claims asserted by both parties. Oral depositions are also commonly used as discovery tools, where parties to the action, as well as witnesses, orally answer questions posed by opposing counsel that are simultaneously recorded by a stenographer. Depositions are very important, because the testimony can later be used at trial to perhaps point out inconsistencies between deposition and trial testimony. Also, depositions are helpful in ascertaining the strength and credibility of the deponent. If interrogatories are sent to us, we will explain the procedure and assist you and any other

relevant employee of [Client's Name] with answering the questions. If depositions are scheduled, we will meet with you or the relevant [Client's Name] employee/deponent prior to the deposition and discuss the process. We will also be present at every deposition.

If your case does not settle after discovery is terminated, then a trial will take place, usually before a judge and six-person jury. Prior to trial, we will spend considerable time with you and other witnesses/parties explaining how a trial is conducted and reviewing everyone's testimony. It is entirely possible that several trial dates will be set, only to be continued because of crowded court calendars. It is very important that you understand the delays that often attend lawsuits; they can stretch on for years, which is why [Client's Name]'s commitment to and patience with this process is imperative. As with everything else relating to this engagement, if [Client's Name]'s ha(ve)(s) any questions regarding the status or progress of this matter, please call me at any time.

## ASSIGNMENT OF FIRM PERSONNEL

I will be primarily responsible for the supervision of [Client's Name]'s matter, but [Client's Name] is/are engaging [Law Firm Name], not me individually. As and when necessary, I will draw upon the talent and expertise of other partners and associates within the firm and utilize paralegal staff to handle administerial tasks. [*Wherever possible, identify others involved and give name of additional contact person in the firm if writer is unavailable.*]

## LEGAL FEES, EXPENSES, AND BILLINGS

*Fees*: We have discussed the fee arrangements for this engagement, and [Client's Name] ha(ve)(s) agreed to pay fees for the services of [Law Firm Name] on an hourly, time-charge basis, based upon the following rates:

Partners: [*Specify rates/ranges.*]
Associates: [*Specify rates/ranges.*]
Paralegals: [*Specify rates/ranges.*]

*Optional*: These rates are subject to adjustment in [month] of every calendar year upon prior notice to [Client's Name]. Our rates will, in any event, not change in this engagement before [date]. Hourly billing will be to the tenth (1/10th) of an hour for time spent on [Client's Name]'s matter. It is important to understand that time spent will include telephone and personal conferences with both [Cli-

**159**

ent's Name] and assigned firm personnel, legal research, [*e.g.*, conferences, meetings, preparation and review of necessary documents and correspondence].

[*Optional*: We have determined that these time-charge rates are applicable to this matter after consideration of the following factors: (a) the nature of the legal issue, including its novelty, complexity, and importance; (b) preclusion of other employment; (c) the amount or consequence at stake and the result obtained; (d) time limitations imposed by [Client's Name] or by the situation; (e) the experience, reputation, and ability of the attorneys; and (f) the skill necessary to handle the legal matter correctly.]

It is difficult to estimate, in advance, the amount of fees that [Client's Name] will incur in connection with this matter. [*Optional*: We anticipate the fees will be in the range of $[amount], exclusive of expenses. This figure is not, however, a maximum fee, but is simply an estimate to allow [Client's Name] to budget appropriately. If we see that the fees will be exceeding this estimate by a significant amount, we will notify [Client's Name].

*Costs and disbursements*: [Client's Name] is/are responsible for payment of any expenses properly and reasonably incurred on [Client's Name]'s behalf, including reimbursement of all disbursements advanced by [Law Firm Name]. Such expenses and disbursements are likely to include, but are not limited to, photocopying and facsimile charges, long distance telephone calls, travel expenses (economy class unless otherwise approved in advance by [Client's Name]), and computer research charges. Costs exceeding $[_____], such as expert witness fees and deposition costs, may be billed directly to [Client's Name], for which [Client's Name] will make prompt, direct payments to the vendor. [Law Firm Name] will attempt to notify [Client's Name] prior to advancing any individual item of which the cost is likely to exceed $[_____].

[*Optional: Retainer*: As is our policy (with new clients), we are requesting an initial deposit of $[_____]. This retainer is a partial advance against anticipated legal fees and disbursements and must be paid before [Law Firm Name] will commence work upon the file. The retainer will be deposited in the firm's client trust account, subject to IOLTA (Interest on Lawyer Trust Accounts) requirements, and applied against [Client's Name]'s bills for legal services and disbursements. If the retainer is exhausted prior to the conclusion of this matter, [Law Firm Name] reserves the right to request replenishment of the retainer before additional work is performed. In the event of

such a request, [Client's Name] agrees to make such replenishment within fourteen (14) days of such request. The retainer, or any unused portion thereof, will be refunded to [Client's Name] in the event it has not been utilized in this matter, immediately upon the conclusion of the matter or upon the termination or withdrawal of [Law Firm Name] from this engagement.]

*Billing arrangements*: Itemized statements of services and disbursements will be sent to [Client's Name] monthly, with payment to be made within thirty (30) days of the invoice date. [*Optional*: [Law Firm Name] reserves the right to charge [Client's Name] interest, not to exceed [_____]% per annum, on any bill outstanding for more than thirty (30) days.] If [Client's Name] has any questions regarding the billing format or any information contained in any invoice or statement, please contact [Law Firm Name] so that we can try to resolve any concerns promptly and amicably.

## CLIENT COOPERATION AND MUTUAL COMMUNICATION

In order to advocate effectively [Client's Name]'s interests, it is important for [Client's Name] to understand, that [Client's Name] ha(ve)(s) an affirmative obligation to assist and to cooperate with [Law Firm Name] during this engagement. For example [*specify likely assistance to be needed from client, e.g.*]: [Client's Name] will be required to furnish certain information and documents, and [Client's Name] [designated Client representatives] may be expected to provide requested documentation promptly to the appropriate firm representative, whether an attorney, paralegal, or secretary. [Client's Name] [designated Client representatives] must be available to work with [Law Firm Name] attorneys in preparation for [meetings] and to discuss issues as they arise throughout this matter. [Client's Name]'s noncooperation will be grounds for [Law Firm Name]'s withdrawal, and thus, it is essential that we maintain open communication.

In return, [Law Firm Name] will keep [Client's Name] informed of the status of this matter and to consult with [Client's Name] when appropriate. Copies of significant correspondence and documents will be sent to the person designated by [Client's Name] from time to time for that purpose. Initially, [Client's Name] has designated [name] for this purpose. [*Optional, but highly recommended*: In the event that [Client's Name] needs to reach [Law Firm Name] and the person sought is unavailable, please leave a message for the person concerned disclosing the nature and urgency of the call. It is our

policy that all calls will be returned promptly, and in any event no later than within one (1) business day of receipt of the call; if you have not received a return call within that time, please call again.]

*Optional—Sophisticated Clients / Transactions Only—*

## PROTECTION OF CLIENT CONFIDENCES—HIGH TECH COMMUNICATION DEVICES

As lawyers, we are always mindful of our central obligation to preserve the precious trust which our clients repose in us—their secrets and confidences. To that end it is important that we agree from the outset what kinds of communications technology we will employ in the course of this engagement. For instance, depending on the degree of security that you wish to maintain, it may not be appropriate to speak using cellular telephones (or at least not to do so where substantive information is being discussed). Similarly, the exchange of documents using the Internet, or even direct computer-to-computer data transfer, may involve some risk that information will be retrieved by third parties with no right to see it. Even the use of fax machines can cause problems if documents are sent to numbers where the documents sit in open view. Accordingly, we request that you indicate below whether you intend or anticipate that any of the listed forms of communication are likely to be used in the course of this engagement. As to each item you check as likely to be used, we will contact you after receiving this letter from you to make the security and transmission arrangements appropriate to each item. In each case, we will send you a separate memorandum for your signature detailing the agreed-upon communication methodology and the nature and level of security to be employed. Please understand that by agreeing to the use of any means of communication other than in-person private meeting or two-way (as opposed to multiparty) land line telephone conversations, you will be giving your consent to, and accepting any risks of disclosure of, confidential information to third parties that may be attendant upon the use of those means of communication.

Cellular telephone ([Client's Name]'s): [          ]

Facsimile machine ([Client's Name]'s): [          ] If checked, give number:

Is the machine at that number in open view of anyone other than you or your designated representative [ ]?

E-mail [      ] If checked, give address:

Do you check your e-mail every day?: Yes [      ] No [      ]

Computer-to-computer data transfer [      ] If checked, identify software:

Do you use a password (*do NOT write it here*)?  Yes [      ]
                                                 No [      ]

Describe other security measures in use (*e.g.*, encryption, fire walls, etc.):

Are there other communications and confidentiality issues which we should be aware of in connection with this engagement? [ ] If checked, please explain:

## WITHDRAWAL

[Client's Name] has the right to terminate this engagement at any time, subject to payment of any final billings. Conversely, [Law Firm Name] reserves the right to withdraw from the engagement, and from representing [Client's name] subject to the ethical restrictions imposed upon us by the applicable Rules of Professional Responsibility, if [Client's Name] fail(s) to cooperate, fail(s) to make timely payments as required pursuant to this letter, or if [Client's Name] request(s) [Law Firm Name] to take any position or action that in our good-faith opinion requires or permits our withdrawal because of professional duties imposed upon us by the applicable Rules of Professional Responsibility. If [Law Firm Name] seeks to terminate this engagement for any reason, reasonable notice will be given to [Client's Name].

## RESOLUTION OF DISPUTES—ARBITRATION

Any controversy or claim arising out of or relating to this engagement letter shall be settled by arbitration in the County of [County], State of [State], as follows: (a) if and to the extent that

[State] shall have adopted rules for fee arbitrations based in whole or in part upon the American Bar Association Model Rules for Fee Arbitrations at any time prior to the issue of a demand for arbitration hereunder, then such rules as adopted in [State] shall govern the arbitration: or (b) if State of [State] shall not have adopted such rules, then such arbitration shall be conducted in all respects in accordance with the Rules of the American Arbitration Association, and any award issued in any such arbitration shall be enforceable in any court with jurisdiction. In any arbitration hereunder, to the extent permitted by the rules governing such arbitration, the arbitrators shall have the power but not the obligation to award reasonable attorneys' fees to the prevailing party.

## BINDING AGREEMENT

This letter represents the entire agreement between [Client's Name] and [Law Firm Name]. By signing below, [Client's Name], (by its [Title and Name]), acknowledge(s) that this letter has been carefully reviewed and its content understood and that [Client's Name] agrees to be bound by all of its terms and conditions. Furthermore, [Client's Name] acknowledge(s) that [Law Firm Name] has made no representations to [Client's Name] regarding the outcome of the matter for which [Law Firm Name] has been engaged hereunder. No change or waiver of any of the provisions of this letter shall be binding on either [Client's Name] or on [Law Firm Name] unless the change is in writing and signed by both [Client's Name] and [Law Firm Name].

If this letter reflects [Client's Name]'s understanding of our relationship, please sign and return the enclosed duplicate copy. In conformance with firm policy, we cannot commence work upon this engagement until we have received a copy of this letter countersigned by [Client's Name].

Thank you again for this opportunity to be of service to [Client's Name]; my colleagues and I look forward to working with you.

Sincerely,

[Law Firm Name]
By:

_____

[Partner's Name]

[Client's Name], (by its [Client's Name:]), has reviewed and agreed to the above terms of engagement of [Law Firm Name]. [*In the event of a conflict disclosure in the letter, insert the appropriate waiver here. E.g.,*: [Client's Name], has been fully informed with respect to the matters potentially constituting a conflict of interest as described in this letter, has had an opportunity to consult other counsel both with respect to the conflict issue or generally in the matter described above in "Scope of Engagement." [Client's Name], desires and consents to the engagement of [Law Firm Name] as attorneys for the purposes and to the extent described in this letter.]

[Client's Name],

By:                    [Name and Title]

Date:

THE ESSENTIAL FORMBOOK, VOLUME I, PART II

## FORM 2
## HOURLY FEE ENGAGEMENT LETTER—SHORTER FORM

[Letterhead]

[Date]

Mr. Right Price
Buy It and Sell It, Inc.
Real Estate Drive
New Development, Georgia

Re: Engagement Agreement

Dear Right:

I very much enjoyed meeting with you yesterday. We appreciate your decision to engage our firm as your legal counsel to represent your company.

*Scope*

The scope of the representation for which Buy It and Sell It, Inc. has engaged us will include various activities in the real estate business. We also will assist you in retaining other lawyers who can provide services outside the areas of our firm's expertise at such times as you request we undertake to render specific services; we will supplement this engagement letter with a separate letter outlining in detail the scope of a particular project. You have instructed us that you will not require any advice on federal, state, or local taxes, as you have engaged the accounting firm of [name] to provide that service exclusively.

*Completion of Work*

We assume that the legal matters that you entrust to us are important to you and require our prompt attention. No project is ever intentionally delayed. As in any firm, however, we do not have complete control over all client matters that we are asked to handle at any given moment. For example, we cannot predict whether the other firms or parties involved in a particular project or negotiation will also give the matter their prompt attention. Therefore, we ask that you contact us if you are concerned about a particular project. We, in turn, will use our best efforts to complete your work timely and will

166

## FORM 6
## STANDARD CONTINGENT FEE ENGAGEMENT LETTER

[Letterhead]

[Date]

[Client Name/Address]

Dear:

It was a pleasure meeting with you on [date] to discuss the representation of [Client] by [Law Firm Name]. I would like to thank you for selecting [Law Firm Name] to handle your matter.

The purpose of this letter is to set forth the terms upon which [Law Firm Name] agrees to represent [Client], in order to establish and maintain a mutual understanding of the goals and respective responsibilities of [Client] and [Law Firm Name].

### SCOPE OF SERVICES

[Client] has engaged [Law Firm Name] to represent [client] *[express in as much detail as possible the exact description of the matter, and the nature of the services to be provided. e.g.,* in connection with your claim for personal injuries sustained by you in an automobile accident on or about [date] in [location].]

[As we have discussed, this engagement letter does not encompass, nor does it engage [Law Firm Name] to represent [Client] in any matter not described above. In particular, this letter does not include *[express in as much detail as possible any possible matters, such as appeals, representation in other transactions, etc., which would be the subject of a separate engagement for any reason].]*

It is understood that [Law Firm Name] will not settle, negotiate or compromise this matter without the express written consent of [Client].

### POSSIBLE CONFLICTS OF INTEREST

*Example:* As we discussed, [Law Firm Name] will not be representing your spouse, [Name], in this litigation because of potential attorney/client privilege and conflict-of-interest concerns. I have advised [Name], by letter dated [date], that [Law Firm Name] cannot represent her and that she is responsible for retaining separate counsel to pursue her claim for damages arising out of this same auto-

mobile accident.] [*Include conflict of interest acknowledgment at end of letter, above countersignature line*]

[*OPTIONAL- but highly recommended*]:

GENERAL LITIGATION INFORMATION

In order to demystify the process of representing [Client] in this case, it may assist if I explain in some detail how this kind of lawsuit is likely to progress and what you can expect during this engagement.

A lawsuit is commenced by the service and filing of a Summons and Complaint. The Complaint recites facts upon which the Plaintiff asserts liability against the Defendant. In this case, you, as Plaintiff, are alleging that (Defendant) caused you injury (based on stated facts). After commencement of the action, the Defendant then has a limited number of days in which to serve and file an answer that typically denies the claims asserted in the Complaint.

Both the Plaintiff(s) and Defendant(s) are afforded a limited period of time called "discovery," during which they investigate the strengths and weaknesses of each other's claims. Written questions called "interrogatories" are frequently exchanged that require written responses about the facts and claims asserted by both parties. Oral depositions are also commonly used as discovery tools, where parties to the action, as well as witnesses, orally answer questions posed by opposing counsel that are simultaneously recorded by a stenographer. Depositions are very important, because the testimony can later be used at trial to perhaps point out inconsistencies between deposition and trial testimony. Also, depositions are helpful in ascertaining the strength and credibility of the deponent. If interrogatories are sent to us, we will explain the procedure and assist with answering the questions. If depositions are scheduled, we will meet with you prior to the deposition and discuss the process. We will also be present at every deposition.

If your case does not settle after discovery is terminated, then a trial will take place, usually before a judge and six (6)-person jury. Prior to trial, we will spend considerable time with you and other witnesses/parties explaining how a trial is conducted and reviewing everyone's testimony. It is entirely possible that several trial dates will be set, only to be continued because of crowded court calendars. It is very important that you understand the delays that often attend lawsuits; they can stretch on for years, which is why [Client's] commitment to and patience with this process is imperative. As with everything else relating to this engagement, if [Client] has any ques-

tions regarding the status or progress of this matter, please call me at any time.

## ASSIGNMENT OF FIRM PERSONNEL

I will be primarily responsible for the supervision of [Client's] matter, but [Client] is engaging [Law Firm Name], not me individually. As and when necessary, I will draw upon the talent and expertise of other partners and associates within the firm and to utilize paralegal staff to handle ministerial tasks. [*Wherever possible, identify others involved, and give name of additional contact person in the firm if writer is unavailable.*]

## LEGAL FEES, EXPENSES AND BILLINGS

*Fees:* [Law Firm Name] has informed [Client] of the hourly rates of its members and its policy and the elements for charging fees. Instead of the usual fee arrangement, [Client] has requested [Law Firm Name] to provide representation for a contingency fee. [Client] agrees to pay [Law Firm Name] a fee contingent upon the outcome of the matter. [Client] agrees the fee shall be [number]% of all sums recovered from this time forward to and including any settlement prior to trial or arbitration hearing; [number]% of all sums recovered from the time of commencement of trial or arbitration hearing through verdict, award or decision; [number]% of all sums recovered therafter if an appeal is undertaken; and [number]% of all sums recovered if the matter is later retried. The specified percentage shall be applied to the total of all money and property recovered, including real or personal property of any kind, punitive damages, and interest, all less actual expenses of the litigation or proceeding itself. In the event there is no recovery in this case, it is understood and agreed that no fee shall be charged by [Law Firm Name].

If [Client] discharges [Law Firm Name], [Client] understands that [Client] will in such event, and in the manner and to the extent permitted by law, be liable for the fair and reasonable value of the services [Law Firm Name] have provided up to the time of such discharge, payable forthwith if the matter is thereafter being handled on an hourly fee basis, and payable if and at such time as [Client] makes any recovery, if the matter is thereafter being handled on a contingent fee basis, subject to any requirements of law and any applicable provisions of the Rules of Professional Conduct as to the total amount of legal fees payable to multiple counsel.

*Costs and disbursements: (Subject to change if/when (State's) Rules of Professional Conduct, permit advancement of funds without obli-*

*gation to obtain repayment:)* Regardless of the outcome of this matter, [Client] is responsible for reimbursing [Law Firm Name] for any actual out-of-pocket expenses incurred on [Client's] behalf in pursuance of [Client's] claim. Such expenses would include, for example, court costs, sheriff's fees, travel expenses, stenographic expenses, expert witnesses' fees, facsimile transmission fees, mailing costs, photocopying charges, electronic legal research charges, and other similar out-of-pocket expenses. [Client] agrees that [Law Firm Name] may deduct and retain from any recovery the amount of any unpaid fees, costs or expenses.

## CLIENT COOPERATION AND MUTUAL COMMUNICATION

In order to effectively advocate [Client's] interests, it is important for [Client] to understand, that it has an affirmative obligation to assist and to cooperate with [Law Firm Name] during this engagement. For example, you will be required to furnish certain documents, information and releases and may be required to attend depositions and court appearances. Consequently, you are expected to provide requested documentation promptly to the appropriate firm representative, whether an attorney, paralegal or secretary. You must also be available to work with [Law Firm Name] attorneys in preparation for depositions, court appearances and to discuss issues as they arise throughout this matter. [Client's] noncooperation will be grounds for [Law Firm Name]'s withdrawal, and thus, it is essential that we maintain open communication.

In return, [Law Firm Name] will keep [Client] informed of the status of this matter and consult with [Client] when appropriate. Copies of significant correspondence and documents will be sent to [Client]. (*Optional, but highly recommended:* In the event that [Client] needs to reach [Law Firm Name] and the person sought is unavailable, please leave a message for the person concerned disclosing the nature and urgency of the call. It is our policy that all calls will be returned promptly, and in any event no later than within one (1) business day of receipt of the call; if you have not received a return call within that time, please call again.)

## WITHDRAWAL

[Client] has the right to terminate this engagement at any time, subject to payment of any final billings. If [Client] discharges [Law Firm Name], [Client] agrees to be responsible for a prompt substitution of counsel. Conversely, [Law Firm Name] reserves the right to withdraw from the engagement and from representation of [Client],

subject to the ethical restrictions imposed upon us by the applicable Rules of Professional Conduct, if [Client] fails to cooperate, if [Client] misrepresents material facts, if [Client] fails to follow the advice of [Law Firm Name], or if [Client] requests [Law Firm Name] to take any position or action that in our good faith opinion requires or permits our withdrawal because of professional duties imposed upon us by the applicable Rules of Professional Conduct. If [Law Firm Name] seeks to terminate this engagement for any reason, reasonable notice will be given to [Client].

RESOLUTION OF DISPUTES—ARBITRATION

Any controversy or claim arising out of or relating to this engagement letter shall be settled by arbitration in the County of [County], State of [State], as follows: (a) if and to the extent that [State] shall have adopted rules for fee arbitrations based in whole or in part upon the American Bar Association Model Rules for Fee Arbitrations at any time prior to the issue of a demand for arbitration hereunder, then such rules as adopted in [State] shall govern the arbitration; or (b) if State of [State] shall not have adopted such rules, then such arbitration shall be conducted in all respects in accordance with the Rules of the American Arbitration Association, and any award issued in any such arbitration shall be enforceable in any court with jurisdiction. In any arbitration hereunder, to, the extent permitted by the rules governing such arbitration, the arbitrators shall have the power, but not the obligation to award reasonable attorneys' fees to the prevailing party.

BINDING AGREEMENT

This letter represents the entire agreement between [Client] and [Law Firm Name]. By signing below, [Client], by its (title and name), acknowledges that this letter has been carefully reviewed and its content understood and that [Client] agrees to be bound by all of its terms and conditions. Furthermore, [Client] acknowledges that [Law Firm Name] has made no representations to [Client] regarding the outcome of the matter for which [Law Firm Name] has been engaged hereunder. No change or waiver of any of the provisions of this letter shall be binding on either [Client] or on [Law Firm Name] unless the change is in writing and signed by both [Client] and [Law Firm Name].

If this letter reflects [Client's] understanding of our relationship, please sign and return the enclosed duplicate copy. In conformance

with firm policy, we cannot commence work upon this engagement until we have received a copy of this letter countersigned by [Client].

Thank you again for this opportunity to be of service to [Client]; my colleagues and I look forward to working with you.

Sincerely,

[Law Firm Name]

By:

_____

A Partner

[Client], by its (Title and name), has reviewed and agreed to the above terms of engagement of [Law Firm Name]. [*In the event of a conflict disclosure in the letter, insert appropriate waiver here. E.g.:* [Client] has been fully informed with respect to the matters potentially constituting a conflict of interest as described in this letter, has had an opportunity to consult other counsel both with respect to the conflict issue, and generally in the matter described above in "Scope of Engagement." [Client] desires and consents to the engagement of [Law Firm Name] as attorneys for the purposes and to the extent described in this letter.]

[Client]
By:    [Name and Title]
Date: [Date]

AGREED: _____

*This form is used with the permission of a Manchester, New Hampshire, law firm.*

EXHIBIT 2

# WRIGHT & REIHNER PC

### A T T O R N E Y S    A T    L A W

148 Adams Avenue
Scranton, PA 18503
Tax ID# 20-1278169

(570) 961-1166 - office
(570) 961-1199 - fax

January 20, 2006

Invoice submitted to:

Jill Celli
901 Lackawanna Avenue
Mayfield PA 18433
USA

Invoice #    11415

### Professional Services

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 8/18/2004 | FJT | Research legal issues regarding First Amendment Retaliation Claim. Discussion with Kevin Quinn regarding same | 2.00 | 300.00 |
| 8/20/2004 | KQ | Research whistleblower claims; phone conference with client; review articles; conference with Joe Wright and Frank Tunis. | 1.30 | 260.00 |
| 8/23/2004 | KQ | Phone conferences with client; review newspaper articles; research regarding NEIU; conference with F. Tunis regarding possible claims to bring in Complaint. | 1.30 | 260.00 |
| 8/24/2004 | KQ | Research regarding Whistleblower Claims; phone conference with client. | 0.70 | 140.00 |
| 8/25/2004 | FJT | Research legal issues regarding filing of First Amendment retaliation claim; begin drafting Complaint; discussions with Kevin Quinn regarding same. | 3.00 | 450.00 |
|  | KQ | Conference with F. Tunis; work on Complaint; related research regarding Whistleblower Claims. | 2.00 | 400.00 |
| 8/26/2004 | FJT | Continue drafting Complaint and researching legal issues; discussions with Kevin Quinn regarding same. | 2.20 | 330.00 |

Jill Celli

Page     2

| | | | Hours | Amount |
|---|---|---|---|---|
| 8/26/2004 | KQ | Conference with F. Tunis regarding status of research into First Amendment Claims; meet with client to review factual history for Complaint; work on Complaint. | 1.70 | 340.00 |
| 8/27/2004 | FJT | Continue drafting First Amendment portion of Complaint. | 0.70 | 105.00 |
| 9/3/2004 | FJT | Review Complaint. | 0.50 | 75.00 |
| 9/8/2004 | FJT | Review and revise draft Complaint; discussion and meeting with K. Quinn re: same. | 3.20 | 480.00 |
| 9/9/2004 | FJT | Research issues re: First Amendment retaliation claims; review and revise Complaint; meeting with K. Quinn re: same. | 3.20 | 480.00 |
| 9/14/2004 | FJT | Continue working on issues related to Complaint; discussions with K. Quinn re: same. | 0.70 | 105.00 |
| 9/17/2004 | KQ | Meeting with client; revise draft Complaint; related research. | 2.00 | 400.00 |
| 9/22/2004 | KQ | Meeting with J. Celli; review with client factual revisions to Complaint; prepare related file notes. | 1.50 | 300.00 |
| 9/27/2004 | KQ | Review/revise Complaint | 1.00 | 200.00 |
| 9/28/2004 | FJT | Review and revise Complaint; meeting and discussion with K. Quinn re: same. | 1.40 | 210.00 |
| | KQ | Review/revise Complaint; related research and conference with G. Reihner and F. Tunis. | 2.00 | 400.00 |
| 9/29/2004 | GAR | Conference with K. Quinn regarding Complaint; review, revise and supplement same. | 1.50 | NO CHARGE |
| | KQ | Conference with G. Reihner re: Complaint; review G. Reihner's comments on draft Complaint. | 0.50 | 100.00 |
| 10/11/2004 | KQ | Work on draft Complaint, conferences with George Reihner, Joseph Wright and Frank Tunis. | 1.00 | 200.00 |
| 10/12/2004 | FJT | Research legal issues re: possible cause of action under Child Protective Services Law; discussion and meeting with K. Quinn re: same. | 1.20 | 180.00 |
| 10/13/2004 | FJT | Make final revision to Complaint; meeting and discussion with K. Quinn re: same; meeting with client to review Complaint. | 1.40 | 210.00 |
| | KQ | Meeting with client; revise Complaint; related conference with Frank Tunis. | 1.50 | 300.00 |
| 10/14/2004 | KQ | Review/revise/finalize/file Complaint; meet with client; conference with Frank Tunis. | 2.50 | 500.00 |

Jill Celli

| | | | Hours | Amount |
|---|---|---|---|---|
| 10/14/2004 FJT | Attend Preliminary Hearing of Defendant Susan Wzorek; meeting with client re: same; meeting and discussion with K. Quinn re: same; research service issues; finalize Complaint for filing and service. | | 3.00 | 450.00 |
| 10/18/2004 KQ | Review summons for court; work on obtaining addresses for service on defendants; phone conference with client. | | 0.50 | 100.00 |
| 10/20/2004 KQ | Telephone conferences with client and District Attorney's office. | | 0.50 | 100.00 |
| 10/21/2004 KQ | Review order from Judge Caputo; phone conference with client; check on status of service. | | 0.50 | 100.00 |
| 11/9/2004 KQ | Telephone conference with Robin Synder; work out acceptance and service and responsive filing deadline issues; review related filing; forward to client. | | 0.40 | 80.00 |
| 11/12/2004 KQ | Telephone conference with with R. Synder; review/file acceptance of service forms; review proof of service for NEIU Defendants. | | 0.70 | 140.00 |
| 11/15/2004 KQ | Telephone conference with client re: current work environment; telephone conference with R. Snyder re: service issues. | | 0.40 | 80.00 |
| 11/17/2004 KQ | Telephone conference with Robin Synder; phone conference with client re: case status/strategy. | | 0.30 | 60.00 |
| 11/18/2004 KQ | Telephone conference with R. Synder; review Motion to Extend Time to Respond to Complaint; review Court filings. | | 0.20 | 40.00 |
| 12/1/2004 KQ | Telephone conference with J. Freund's office regarding representation issues; draft letter to J. Freund; conference with A. Vitorio; phone conference with R. Polachek regarding representation of S. Wzorek; research regarding J.Freund's experience and reputation | | 1.00 | 200.00 |
| 12/9/2004 FJT | Review Motion to Dismiss filed by Abington Defendants; meeting and discussion with K.Quinn regarding same. | | 0.80 | 120.00 |
| 12/13/2004 KQ | Review motion to dismiss; related research and brief filed on behalf of Abington Heights Defendants; research regarding oppostion Brief. | | 2.50 | 500.00 |
| 12/15/2004 KQ | Review cases cited by Abington Defendants in Motion to Dismiss; follow up research and conference with F Tunis. | | 1.50 | 300.00 |
| 12/16/2004 FJT | Meeting and discussion with K. Quinn regarding Motion to Dismiss filed by Abington Heights Defendants; review Motion to Dismiss and supporting Brief. | | 0.90 | 135.00 |
| 12/17/2004 FJT | Begin researching issues related to Defendants' Motion to Dismiss. | | 2.00 | 300.00 |
| 12/20/2004 KQ | Work on Brief in opposition to Abington Defendants' Motion to Dismiss Complaint; related research. | | 1.50 | 300.00 |

Jill Celli

Page    4

| | | | Hours | Amount |
|---|---|---|---|---|
| 12/21/2004 | FJT | Conduct additional research re: Abington Defendents' Motion to Dismiss. | 1.10 | 165.00 |
| | KQ | Continue working on Brief in opposition to Abington Defendants' Motion to Dismiss Complaint; related research; email to R. Snyder. | 2.30 | 460.00 |
| 12/22/2004 | KQ | Review answer and amended answer filed on behalf of NEIU; continue research for opposition Brief. | 1.50 | 300.00 |
| 12/23/2004 | KQ | Draft/revise Motion for extension of time to respond to Abington Defendants' Motion to Dismiss; draft/revise proposed order; review Defendant Wzorek's answer to affirmative defenses; phone conference with J.Celli regarding case status; conference with F.Tunis regarding research issues for Brief. | 2.20 | 440.00 |
| 12/27/2004 | FJT | Continue researching issues related to Abington Defendants' Motion to Dismiss. | 1.40 | 210.00 |
| 12/28/2004 | FJT | Continue researching issues related to Abington Defendants' Motion to Dismiss. | 1.50 | 225.00 |
| | KQ | Draft status report to client; draft Answers to Affirmative Defenses filed by NEIU Defendants and Wzorek; revise same; conference with F. Tunis re: research issues re: Abington's Motion to Dismiss | 1.50 | 300.00 |
| 12/30/2004 | FJT | Conduct additional legal research; meeting and discussion with K.Quinn re: same. | 1.00 | 150.00 |
| 1/3/2005 | KQ | Review Abington Defendants' 12(B) (6) Motion and attached caselaw; prepare outline of arguments to advance in opposition to Abington Defendants' Motion; research section 1983's "color of law", conspiracy and municipal liability issues; conference with F.Tunis re; strategy; work on opposition Brief. | 3.50 | 700.00 |
| 1/4/2005 | FJT | Review caselaw cited by Abington Defendants in Motion to Dismiss; meeting and discussions with K.Quinn re:same; work on Brief. | 3.10 | 465.00 |
| | KQ | Continue work on Brief in opposition to Abington Defendants' 12(B) (6) Motion; related research and conference with Frank Tunis. | 3.30 | 660.00 |
| 1/5/2005 | KQ | Continue work on Brief in oppostion to Abington Defendants' Motion to Dismiss; related research re: "state actor" and municipal policy issues under section 1983. | 2.80 | 560.00 |
| | FJT | Continue drafting various sections of brief in oppostion to Abington Defendants' Motion to Dismiss; conduct additional legal research re: same. | 3.20 | 480.00 |
| 1/6/2005 | FJT | Continue drafting sections of brief in oppostion to Abington Defendants' Motion to Dismiss; meeting and discussion with K.Quinn re:same. | 3.00 | 450.00 |

Jill Celli

Page    5

| | | | Hours | Amount |
|---|---|---|---|---|
| 1/6/2005 KQ | Continue work on Brief in Opposition to Abington Defendants' 12(B) (6) Motion; related research and discussions with Frank Tunis. | | 3.00 | 600.00 |
| 1/7/2005 KQ | Research re: intentional infliction of emotional damages under Pennsylvania and Third Circuit law; continue working on Brief in opposition to Abington Defendants' 12(B) (6) Motion; related research and conference with Frank Tunis | | 4.00 | 800.00 |
| FJT | Continue drafting Brief in Oppostion to Abington Defendants' Motion to Dismiss; conduct additional research re: same. | | 2.20 | 330.00 |
| 1/8/2005 KQ | Continue drafting/revising Brief in opposition to Abington Defendants' 12(B) (6) Motion; related research and phone conference with F.Tunis. | | 3.00 | 600.00 |
| 1/10/2005 FJT | Final drafting of Brief in Opposition to Motion to Dismiss; review and revise same; prepare same for filing and service. | | 2.90 | 435.00 |
| KQ | Continue drafting/revising Brief in opposition to Abington Defendants' 12(B) (6) Motion; related research and discussions with Frank Tunis; draft/revise Motion to exceed 15 paged and proposed Order. | | 4.00 | 800.00 |
| 1/11/2005 KQ | Review finalized Brief; draft status report to client; organize research materials. | | 1.50 | 300.00 |
| 1/13/2005 KQ | Begin working on Rule 26 initial disclosures. | | 2.20 | 440.00 |
| 1/25/2005 KQ | Review Abington Defendants' Reply Brief re: Motion to Dismiss Complaint; conference with F.Tunis; begin drafting Motion to strike portions of Reply Brief | | 1.50 | 300.00 |
| FJT | Review Abington Heights' Reply Brief in support of Motion to Dismiss; meeting and discussion with K.Quinn re: same. | | 0.60 | 90.00 |
| 1/26/2005 KQ | Draft email to R. Snyder; work on Motion to strike portions of Abington Defendants' Reply Brief. | | 1.00 | 200.00 |
| 1/27/2005 KQ | Review/revise/finalize Motion to strike portions of Abington Defendants' Reply Brief; draft report to clients; draft proposed Order. | | 1.50 | 300.00 |
| FJT | Research issues related to Motion to strike portions of Abington Defendants' Reply Brief in support of Motion to Dismiss; meeting and discussions with K. Quinn re: same. | | 0.70 | 105.00 |
| 1/31/2005 KQ | Begin drafting Brief in support of Motion to strike | | 1.00 | 200.00 |
| 2/7/2005 KQ | Continue working on Brief in support of Motion to strike portions of Abington Defendants' Reply Brief; update research; revise/finalize Brief; draft related letter. | | 1.50 | 300.00 |
| 2/25/2005 KQ | Review Abington Defendants' opposition Brief; followup discussion with F.Tunis. | | 0.40 | 80.00 |

Jill Celli                                                                                     Page    6

|  |  | | Hours | Amount |
|---|---|---|---|---|
| 2/25/2005 | FJT | Review Brief in opposition to Motion to Strike. | 0.10 | 15.00 |
| 3/2/2005 | KQ | Review case management order; phone conference with client re: same;email to F.Tunis re: draft case management plan and Rule 26 disclosures; draft letter to defense counsel; conference with F.Tunis. | 1.50 | 300.00 |
| 3/3/2005 | FJT | Review case management order; email communication with K.Quinn re: same; research issues related to Rule 26 initial disclosures; continue drafting initial disclosures. | 2.70 | 405.00 |
| 3/4/2005 | KQ | Review materials provided by client and draft Rule 26 Disclosures; draft file notes re: followup discovery items; conference with F.Tunis re: case management plan. | 2.00 | 400.00 |
|  | FJT | Finish drafting initial disclosures; foward same to K.Quinn for review and insert of additional responsive information. | 1.00 | 150.00 |
| 3/7/2005 | FJT | Continue drafting case management plan. | 1.40 | 210.00 |
|  | KQ | Continue working on Rule 26 Initial Disclosues and joint case management  plan; emails to/from R. Snyder re: consolidation. | 1.50 | 300.00 |
| 3/8/2005 | KQ | Work on Rule 26 initial disclosures and joint case management plan; related conference with F.Tunis. | 1.00 | 200.00 |
|  | FJT | Continue drafting case management plan; meeting and discussion with K.Quinn re: same. | 1.00 | 150.00 |
| 3/9/2005 | KQ | Telephone conference with Gene Talarico; conference with F.Tunis; revise Rule 26 disclosures. | 0.50 | 100.00 |
|  | FJT | Continue drafting case management plan; review multiple file documents in connection with same. | 2.40 | 360.00 |
| 3/10/2005 | FJT | Finish drafting case management plan; forward same to K.Quinn for review, revision, and additional inserts; meeting and discussion with K.Quinn re: status of DA's investigation and trial preparation. | 1.70 | 255.00 |
|  | KQ | Meeting with G. Talarico and K. Granahan of district attorney's office re: status of Sue Wzorek's criminal proceedings and results of DA's investigation; work on joint case management plan and Rule 26 disclosures; phone conference with client; conferences with F.Tunis and J.Wright. | 2.70 | 540.00 |
| 3/11/2005 | KQ | Continue working on draft joint case management plan and Rule 26 disclosures; related conference with F.Tunis. | 2.80 | 560.00 |
| 3/14/2005 | FJT | Begin drafting outline of claims/damages in preparation for case management conference and mediation. Research legal issues re: same. Review file documents in connection with same. | 3.20 | 480.00 |

Jill Celli                                                                                      Page     7

| | | | Hours | Amount |
|---|---|---|---|---|
| 3/14/2005 | KQ | Continue working on draft Joint case management plan and Rule 26 disclosures; finalize drafts and forward to defense counsel. | 2.50 | 500.00 |
| 3/15/2005 | KQ | Meet with client re: case update/strategy and review of Rule 26 disclosure and draft Joint Case Management Plan; discuss with client general subject matter of testimony of all witnesses; draft notes re: supplementary Rule 26 Disclosures. | 1.50 | 300.00 |
| 3/16/2005 | FJT | Continue drafting outline of claims/damages for case management conference and mediation; research additional legal issues re: same. | 3.50 | 525.00 |
| | KQ | Prepare for and participate in conference call with defense counsel re: joint case management plan; review additions of R. Polachek to joint plan; incorporate same; draft plaintiff's supplemental Rule 26 disclosures; conference with F.Tunis re: research needed to prepare for case management conference; draft letter to counsel . | 2.50 | 500.00 |
| 3/17/2005 | FJT | Continue drafting outline of claims/damages; review caselaw in connection with same. | 2.20 | 330.00 |
| | KQ | Receive/review supplements from Abington and NEIU defendants for incorporation into Joint Case management Plan ; make remaining revisions; multiple related follow-up emails to R. Snyder and J.Freund's paralegal re: Joint Case management plan; finalize same for filing; phone conference with client. | 2.50 | 500.00 |
| 3/18/2005 | FJT | Continue drafting outline of claims/damages. | 1.50 | 225.00 |
| | KQ | Review email from T  Michilecky (John Freund's paralegal) re: supplements to Case Management Plan; forward to A. Vitorio. | 0.10 | 20.00 |
| 3/21/2005 | FJT | Finalize outline of claims/damages in preparation for  Case Management Conference and Mediation; forward same to J.Wright and K.Quinn for review. | 2.00 | 300.00 |
| 3/22/2005 | FJT | Meeting and discussion with K.Quinn re: case management conference; finish preparing documents for use at case management conference. | 1.10 | 165.00 |
| | KQ | Review Complaint: Motion to Dismiss of Abington Defendants' Briefs in support of and in opposition to Abington Defendant's Motion; prepare outline in case court entertains oral argument; review Frank Tunis's research memo re: elements and damages recoverable under each count of  Complaint in preparation for case management conference; attend/participate in case management conference. | 3.00 | 600.00 |
| 3/23/2005 | KQ | Review Order granting Plaintiff's Motion to Strike "new" arguments raised by Abington Defendants' in Reply Brief; conference with J.Wright re: strategy for discovery/mediation. | 0.80 | 160.00 |
| 3/25/2005 | KQ | Begin working on settlement demand letter. | 1.00 | 200.00 |

Jill Celli                                                                     Page    8

| | | Hours | Amount |
|---|---|---|---|
| 3/29/2005 KQ | Review case law re: recovery of attorney's fees/ punitive charges to include in settlement demand letter; phone conference with client; review list of witnesses identified in Rule 26 Disclosures re: establishing pre-mediation deposition lineup; work on settlement demand letter; conference with J.Wright re: same. | 2.00 | 400.00 |
| 3/30/2005 KQ | Meeting with client re: case review/strategy ; discuss lineup of depositions to take before mediation session. | 1.80 | 300.00 |
| 3/31/2005 KQ | Work on settlement demand letter; related conferences with J.Wright and G. Reihner;prepare pre-mediation "to do" list. | 1.50 | 300.00 |
| 4/1/2005 KQ | Review/revise/finalize demand letter; related conference with J.Wright; research/review recent First Amended settlements/verdicts. | 1.50 | 300.00 |
| 4/4/2005 KQ | Review documents provided by clients; assemble materials to produce to defendants. | 0.70 | 140.00 |
| 4/5/2005 KQ | Review recent decsions re: First Amendment Retaliation claims and recovery of punitive damages/attorney's fees in 1983 cases; conference with A. Vitorio re: information communicated by client re: continued discrimination; provide instructions as to how client needs to react. | 1.00 | 200.00 |
| 4/6/2005 KQ | Continued review/redaction of discovery materials produced by client; draft letter to counsel forwarding Plaintiffs' discovery documents: draft letter to Dr.Jaditz re: request for medical records; review Defendants' Rule 26 Disclosures and make specific list of documents to be forwarded by 4/20/05; draft proposed pre-mediation discovery schedule. | 3.00 | 600.00 |
| 4/8/2005 KQ | Conference with A. Vitorio re: deposition scheduling and conferences with clients; draft discovery "to do". | 0.50 | 100.00 |
| 4/11/2005 KQ | Work on deposition outlines; conference with client. | 2.00 | 400.00 |
| 4/12/2005 KQ | Continued deposition preparation; begin assembling materials for upcoming mediation. | 2.50 | 500.00 |
| 4/13/2005 FJT | Meeting and discussion with K.Quinn re: case related issues. | 0.30 | 45.00 |
| 4/14/2005 KQ | Begin preparing for upcoming depositions; related file review; prepare file notes. | 2.00 | 400.00 |
| 4/15/2005 KQ | Review medical records provided by Dr. Jaditz; review discovery requests prepared by NEIU Defendants. | 1.00 | 200.00 |
| 4/22/2005 KQ | Conference with A. Vitorio re: depostion scheduling; prepare notes for preparation of client for upcoming depostions. | 1.50 | 300.00 |
| 4/26/2005 KQ | Review Defendants' discovery requests; draft letter to client; draft letter to opposing counsel re: demand for Rule 26 disclosure materials and discovery schedule; draft notices of depositions. | 2.50 | 500.00 |

Jill Celli

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 5/2/2005 | FJT | Meeting with clients; attend jury selection of criminal trial for Defendant Wzorek.; meeting and discussion with K.Quinn re: same. | 1.40 | 210.00 |
| 5/13/2005 | KQ | Continued working on discovery objections/responses;phone conference with client; review of file | 1.80 | 360.00 |
| 5/16/2005 | KQ | Conference with A. Vitorio re: deposition scheduling; draft letter to R. Wendelowski re: scheduling conference call for mediation/ discovery dates; phone conference with client. | 1.50 | 300.00 |
| 5/18/2005 | KQ | Draft letter to counsel re: arbitration / discovery issues; revise letter; phone conference with client. | 1.50 | 300.00 |
| 5/20/2005 | KQ | Draft letter to clients; review correspondence from J.Fruend re: mediation scheduling; phone conference with client. | 0.50 | 100.00 |
| 5/23/2005 | KQ | Review Rule 26 Disclosures produced by Abington Defendants; review NEIU Notice of Proposed Settlement in IEP case. | 1.50 | 300.00 |
| 5/25/2005 | KQ | Draft/ revise Motion to extend deadlines for mediation and proposed Order; finalize and file same; meet with client to review/comment on documents produced by Abington and NEIU Defendants; prepare notes for follow up discovery/inquiries. | 3.00 | 600.00 |
| 6/2/2005 | KQ | Work on Discovery Objections/responses; related review of materials provided by client. | 2.50 | 500.00 |
| 6/3/2005 | KQ | Work on responses to NEIU Defendant's written discovery requests. | 1.30 | 260.00 |
| 6/7/2005 | KQ | Review discovery requests provided by W. Zorek's counsel; draft letter to client. | 0.80 | 160.00 |
| 6/8/2005 | KQ | Work on discovery responses. | 1.50 | 300.00 |
| 6/9/2005 | KQ | Telephone conference with J.Celli re: Depositions; related emails. | 0.30 | 60.00 |
| 6/10/2005 | KQ | Work on discovery responses. | 1.00 | 200.00 |
| 6/13/2005 | KQ | Draft letter to counsel re: discovery; revise Notice of Deposition. | 0.50 | 100.00 |
| 6/14/2005 | KQ | Telephone conference with R. Synder re: M.E. Sluko; draft email to Secretary re: instructions for scheduling Mediation and conference call; review letter from J.Freund re: discovery. | 0.50 | 100.00 |
| 6/15/2005 | KQ | Work on discovery responses; draft notes re: client's deposition preparation and Defedant's depositions. | 1.50 | 300.00 |
| 6/16/2005 | KQ | Work on discovery responses; phone conference with client. | 1.50 | 300.00 |
| 6/17/2005 | KQ | Prepare subpoena for Lackawanna County District Attorney's office; prepare Exhibit "A" for subpoena; revise same; prepare related correspondence to DA's office and opposing counsel. | 1.00 | 200.00 |

Jill Celli                                                                                    Page   10

|  |  | Hours | Amount |
|---|---|---|---|
| 6/23/2005 KQ | Telephone conference with office re: conference call set up; participate in conference call with Mediator (Raymond Wendelowski); work on discovery responses; phone conference with office re: calendar deadlines and contact clients. | 1.50 | 300.00 |
| 6/27/2005 KQ | Review materials produced by District Attorney's office; phone conference with client re: same; prepare file notes re: use of DA's materials during upcoming Depositions. | 2.50 | 500.00 |
| 6/28/2005 KQ | Telephone conference with J.Celli re: case status, Dept of Education investigation and upcoming Depositions. | 1.00 | 200.00 |
| 6/30/2005 KQ | Meet with clients; review D.A.'s materials and prepare for upcoming Depositions; review discovery responses; draft letter to counsel. | 2.00 | 400.00 |
| 7/1/2005 KQ | Review/revise/finalize discovery responses; review/organize documents to produce to Defendants; draft letter to DA's office. | 1.50 | 300.00 |
| 7/5/2005 KQ | Review supplemental materials produced by District Attorney's office; prepare file notes re: same. | 0.50 | 100.00 |
| 7/11/2005 KQ | Meet with client to prepare for deposition on 7/12/05; meet with PA State Investigator Steven Tucker re: investigation into Sue Wzorek's professional license and related interview of client. | 4.00 | 800.00 |
| 7/12/2005 KQ | Meet with client re: final deposition preparation; attend/defend client's deposition. | 6.00 | 1,200.00 |
| 7/13/2005 KQ | Organize final materials; prepare notes for topics to cover during NEIU depositions; conference with J.Wright re: Plaintiff's deposition. | 1.30 | 260.00 |
| 7/15/2005 KQ | Prepare outline for mediation statement to submit to R. Wendelowski; related conference with J.Wright re: strategy; review discovery materials produced by Abington and NEIU Defendants; prepare deposition outline for Dr. Rosetti; organize exhibits for Rosetti deposition. | 3.00 | 600.00 |
| 7/18/2005 KQ | Draft/revise/finalize mediation statement to submit to R. Wendelowski; related conference with J.Wright; prepare outline for depositions of Dr. Lemanna, Michelle Homish and J.O'Hora; organize/review deposition exhibits. | 4.50 | 900.00 |
| 7/19/2005 FJT | Research legal issues re: exhaustion of administrative remedies in connection with collective bargaining agreement. | 1.00 | 150.00 |
| KQ | Prepare for and take depositions of Dr. Rosetti, Dr. Lemanna, M.Homish and J.O'Hora; post-deposition meeting with client; prepare for 7/20/05 mediation; related conference with F.Tunis re: research issue (exhaustion of remedies issue); review of research materials. | 5.00 | 1,000.00 |
| JTW | Prepare for and attend deposition. | 3.50 | 875.00 |

Jill Celli

Page    11

| | | | Hours | Amount |
|---|---|---|---|---|
| 7/20/2005 | KQ | Meet with client and J.Wright; prepare for and participate in Mediation with R. Wendelowski; conference with J.Wright re: follow-up discovery; post Mediation meeting with client; begin drafting discovery requests. | 3.50 | 700.00 |
| | JTW | Attend mediation session; related meeting with K.Quinn and client. | 2.50 | 625.00 |
| 7/25/2005 | KQ | Review Deposition transcripts; draft letter to client. | 1.50 | 300.00 |
| 8/1/2005 | KQ | Work on Interrogatories / Document requests to proposed on NEIU Defendants; work on memo to J.Wright re: depositions; conference with J.Wright. | 2.00 | 400.00 |
| 8/2/2005 | KQ | Review discovery requests to propound on NEIU Defendants; draft discovery requests to propound on Wzorek and Abington Defendants; revise discovery memo to J.Wright. | 2.00 | 400.00 |
| 8/17/2005 | DMM | Correspondence to all counsel re: Depositions. | 0.20 | NO CHARGE |
| | KQ | Review Order denying (in part) Abington Defendants' Rule 12 (b) Motion to Dismiss; review correspondence from R. Synder and letter from Dr. Gentilezza re: M.Sluko. | 0.50 | 100.00 |
| 8/18/2005 | JTW | Review correspondence and send to defense counsel re: scheduling of depositions. | 0.40 | 100.00 |
| | FJT | Review memo and order by Judge Caputo denying in part and approving in part Abington Heights Defendant's Motion to Dismiss; meeting with K.Quinn and J.Wright re: same. | 1.20 | 180.00 |
| 8/23/2005 | FJT | Meeting and discussion with J.Wright re: filing on Amended Complaint. | 0.50 | 75.00 |
| 8/26/2005 | JTW | Prepare notice of depositions and correspondence to Defense counsel. | 0.50 | 125.00 |
| 8/28/2005 | JTW | Telephone conference with Robin Snyder; research on Protective Order, rescheduling deposition; prepare for depositions. | 3.50 | 875.00 |
| 9/8/2005 | KQ | Review NEIU Defendants' Answers to Plaintiffs' interrogatories and Request for Production of Documents; review documents produced by NEIU Defendants' attorney with privilege log; draft correspondence letter to J.Fruend outlining differences in NEIU Defendants' discovery responses; revise same; phone conference with client; draft letter to Abington Defendants' counsel. | 2.50 | 500.00 |
| 9/13/2005 | KQ | Review J.Fruend's responses to 9/7/05 letter; conference with J.Wright; draft responses to J.Fruend; prepare file notes re: documents produced by NEIU;prepare file memo outlining current discovery disputes in preparation for planned conference call with Judge Caputo. | 2.50 | 500.00 |
| 9/14/2005 | KQ | Review Abington Defendants' answers to Interrogatories and Request for Production of Documents; review documents produced by Abington Defendants; update file memo re: outlining discovery issues; conference with J.Wright re: upcoming depositions of Abington | 3.00 | 600.00 |

Jill Celli

| | | Hours | Amount |
|---|---|---|---|
| | Defendants; prepare additional notes for topics to cover with Abington Defendants; phone conference with client. | | |
| 9/15/2005 KQ | Review NEIU's supplemental document production including applicable policies and procedures; conference with J.Wright; draft letter to J.Fruend re: rescheduling of discovery conference call with Judge Caputo; draft subpoenas for Jeff Tucker, Esq. and his law firm; revise same; draft declarations to go with subpoenas and related cover letters. | 3.00 | 600.00 |
| 9/16/2005 KQ | Work on file memo outlining discovery disputes; related conference with J.Wright; phone conference with L.Moran, co-counsel for parents/students; review supplemental document production; coordinate depositions / conference call with court; phone conference with R. Snyder. | 1.70 | 340.00 |
| 9/21/2005 KQ | Work on Motion for Leave to File Amended Complaint. | 1.50 | 300.00 |
| 9/22/2005 KQ | Continue working on Motion for Leave to Amend Complaint, proposed Order and the proposed Amended Complaint; related discussion with J.Wright re: same and meeting with L.Moran. | 3.50 | 700.00 |
| 9/23/2005 KQ | Review discovery materials; prepare for and participate in meeting with L.Moran and J.Wright; discuss strategy for going forward and items needed from Larry's clients (i.e. - parent teacher contact books, authorization re: release of student records, etc.); prepare file memo. | 2.00 | 400.00 |
| 9/27/2005 KQ | Review/revise letter to L.Moran, including discovery materials and parent authorizations; assemble records to provide to L.Moran; review/revise memo to file re: outline of discovery issues to discuss with Judge Caputo during 9/28/05 discovery conference call; related legal research. | 2.00 | 400.00 |
| 9/28/2005 KQ | Conference with J.Wright; prepare for and participate in conference call with Judge Caputo to discuss outstanding discovery disputes; resolve several discovery disputes; prepare memo to file with outline of Court's discovery rulings; travel to L.Moran's office (drop off discovery materials and parent authorization for release of student records); return travel. | 2.00 | 400.00 |
| 9/30/2005 KQ | Telephone conference with client re: results of case conference with Judge Caputo; phone conference with M.Williams (Jared's mother) re: need for authorization to get records; prepare status report to clients, with memo from 9/28/05 conference; revise same; letter to J.Fruend re: document inspection at NEIU. | 2.00 | 400.00 |
| 10/3/2005 KQ | Work on Brief in Support of Motion for Leave to Amend Complaint; related research; phone conference with client; meet with M.Williams; her husband and son re: obtaining parental consent to obtain son's records; revise authorization; review documents supplied by M.Williams. | 2.50 | 500.00 |
| 10/5/2005 KQ | Work on Brief in Support of Motion for Leave to Amend Complaint; related research; review NEIU Defendants' opposition Brief. | 2.50 | 500.00 |

Jill Celli

Page    13

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 10/12/2005 | KQ | Begin drafting Reply Brief in support of Motion for Leave to Amend Complaint. | 1.00 | 200.00 |
| 10/13/2005 | KQ | Travel to NEIU; conduct inspection of NEIU Board minutes from 2002 - to present; designate same for copying; return travel; prepare file notes; conference with J.Wright; review Abington Defendants' Brief in Opposition to Motion for Leave to Amend Complaint. | 2.50 | 500.00 |
| 10/14/2005 | KQ | Work on Reply Brief re: Motion for Leave to Amend Complaint; work on file memo re: NEIU document inspection. | 1.50 | 300.00 |
| 10/19/2005 | KQ | Continued work on Reply Breif re: Motion for Leave to File Amended Complaint; review Dr. Gentilezza's updated report re: Sluko. | 1.50 | 300.00 |
| 10/20/2005 | KQ | Work on Reply Brief in support of Motion for Leave to file Amended Complaint; finalize same; send report to client; work on letter to NEIU re: parent consent. | 2.00 | 400.00 |
| 10/28/2005 | JTW | Review report re: Maryellen Sluko's inability to give a deposition. | 0.30 | 75.00 |
| 11/4/2005 | KQ | Review correspondence and pleadings to prepare for conference call with Court; participate in conference call; review Defendants' offer and Judgment; related research under Fed.R. Ciu.P.68; phone conferences with client (2) re: conference call and Defendatns' offer; begin to proofread bills to correct errors. | 2.50 | 500.00 |
| 11/7/2005 | KQ | Conference with J.Wright re: results of conference call with court on 11/4 and Defendants' Offer of Judgment and strategy for responding to same; phone conference with client. | 0.80 | 160.00 |
| 11/8/2005 | KQ | Meet with client to review Offer of Judgment and discuss response thereto; proofread bills; conference with J.Wright; meet with J.Conaboy and C.Abrahassen re: document production issues andparental cooperation with IEP records, etc. | 2.00 | 400.00 |
| 11/10/2005 | KQ | Work on response to Defendants' Offer of Judgment; proofread bills; draft letter to R. Snyder; phone conference with client; conference with J.Wright. | 2.00 | 400.00 |
| 11/14/2005 | KQ | Telephone conference/multiple emails with R. Snyder re: Offer of Judgment; related conference with J.Wright and phone conference with client. | 1.00 | 200.00 |
| 11/17/2005 | KQ | Telephone conference with all defense counsel re: Offer of Judgment and attorneys' fees issue; draft follow-up letter; conference with J.Wright; phone conference with client. | 0.80 | 160.00 |
| 11/18/2005 | KQ | Communications to/from Defense counsel re: Offer of Judgment; related confernce with J.Wright. | 0.70 | 140.00 |

Jill Celli

| | | | Hours | Amount |
|---|---|---|---|---|
| 11/30/2005 KQ | Review Review J.Fruend's letter; phone conferences (2) with J.Fruend and R. Polachek re: settlement issues; related phone conference with client. | | 1.00 | 200.00 |
| 12/2/2005 KQ | Telephone conferences (2) with with R. Snyder and client re: resolution of Wzorek settlement issue and determining reasonable counsel fees; draft letter to counsel; revise same; conference with J.Wright. | | 1.50 | 300.00 |
| 12/5/2005 KQ | Draft fee Petition and supporting Order and Declaration of Joseph Ferguson;related research. | | 2.00 | 400.00 |
| 12/7/2005 KQ | Work on Fee Petition, supporting Order and Declarations; review revised settlement agreement and letter from R. Polachek with Wzorek release. | | 2.00 | 400.00 |
| 12/8/2005 KQ | Work on Motion for Attorneys' Fees and Litigation Costs; phone conference with J.Ferguson and J. Lenahan re: executing Declarations of Reasonableness of our hourly rates; draft Declarations for J.Ferguson and J.Lenahan; conference with J.Wright; phone conference with R. Polachek;review revised Wzorek release. | | 3.50 | 700.00 |
| 12/9/2005 KQ | Review/revise/finalize Motion for Attorneys' Fees and Litigation Costs. | | 1.50 | 300.00 |
| 12/12/2005 KQ | Meeting with client to obtain signature on Release; draft letter to counsel re: same; phone conference with R. Polachek; emails to/from R. Snyder. | | 1.00 | 200.00 |
| 12/15/2005 KQ | Work on Brief in support of Motion for Attorneys' Fees and Costs; related research. | | 3.50 | 700.00 |
| 12/19/2005 KQ | Continue working on Brief in support of Motion for Attorneys' Fees/Costs; related conference with J.Wright and F.Tunis; additional research; draft email to R. Snyder. | | 2.50 | 500.00 |
| KQ | Continue working on Brief in support of Motion for Attorneys' Fees/Costs; related conference with J.Wright and F.Tunis; additional research; draft email to R. Snyder. | | 2.50 | 500.00 |
| 12/20/2005 KQ | Review/revise/finalize Brief in support of Motion for Attorneys' Fees and Costs. | | 3.00 | 600.00 |
| 12/29/2005 KQ | Review NEIU Defendant's Breif in opposition to Motion for Attorneys' Fees and Costs; review caselaw cited in Brief; conferences with F.Tunis and J.Wright re: Reply Drief points. | | 1.50 | 300.00 |
| 1/10/2006 KQ | Review Wzorek's Motion for Extension and opposition Brief; phone conference with T. Clark; draft consented Motion for Enlargement of Time and proposed Order; finalize/file same. | | 1.00 | 200.00 |
| 1/16/2006 KQ | Review Defendants' Briefs in opposition to Attorneys' Fees Petition; draft list of issues to address in Reply Brief; additional research to include in Reply Brief; phone conference with R. Polachek. | | 2.00 | 400.00 |

Jill Celli

Page    15

| Date | | Description | Hours | Amount |
|------|--|-------------|-------|--------|
| 1/17/2006 | KQ | Work on Reply Brief in support of Motion for Attorneys' Fees and Litigation Costs; related research. | 3.00 | 600.00 |
| 1/18/2006 | FJT | Legal Research re: fee petition issues; breakdown numerous inaccuracies in NEIU Defendants' Opposition Brief. | 4.80 | 720.00 |
| | KQ | Work on Reply Brief in support of Motion for Attorneys' Fees and Costs; related supplemental research; conference with F.Tunis re: follow-up research on litigation issues and recovery for computer research; phone conference with client; draft client's Declaration to submit in support of Motion. | 3.00 | 600.00 |
| 1/19/2006 | FJT | Legal Research re: fee petition issues. | 1.50 | 225.00 |
| | KQ | Continue working on Reply Brief in support of Motion for Attorneys' Fees; revise Declaration; draft Declaration for Jill Celli. | 2.00 | 400.00 |
| 1/20/2006 | KQ | Finish drafting Reply Brief in support of Motion for Attorneys' Fees and Costs; revise Declaration; conference with F.Tunis. | 3.50 | 700.00 |
| | FJT | Review/revise Reply Brief; conference with K.Quinn; additional legal research re: fee dispute issues; auto cite case law. | 2.50 | 375.00 |

For professional services rendered    369.90    $69,980.00

Additional Charges :

| Date | | Description | | Amount |
|------|--|-------------|--|--------|
| 9/1/2004-<br>9/30/2004 | JTW | Lexis- | | 1.64 |
| | KQ | Lexis | | 25.23 |
| 9/13/2004 | KQ | Filing Fee - U.S. District Court | | 150.00 |
| 10/1/2004-<br>10/31/2004 | JTW | Copying cost 485 pages @ .15 a page | | 72.75 |
| | JTW | Lexis | | 4.38 |
| 10/1/2004-<br>12/31/2004 | KQ | Miscellaneous - PACER fee | | 3.19 |
| 11/1/2004-<br>11/30/2004 | KQ | Copying cost 77 pages @.15 per page | | 11.55 |
| 11/4/2004 | KQ | Service Fee - One half of fee to serve complaint - Thomas J. Earley Process Server | | 62.50 |
| 12/1/2004-<br>12/31/2004 | KQ | Lexis | | 96.48 |

Jill Celli

Page    16

Amount

| Date | | Description | Amount |
|---|---|---|---|
| 12/1/2004-KQ 12/31/2004 | | Copying cost - 311 pages @ .15 each | 46.65 |
| 1/1/2005-KQ 1/31/2005 | | Copying cost - 259 pages @ .15 each | 38.85 |
| KQ | | Lexis | 70.49 |
| 1/1/2005-KQ 3/31/2005 | | Miscellaneous - PACER fee | 1.04 |
| 2/1/2005 KQ | | Copying cost of 13 pages @ .15 per page | 1.95 |
| KQ | | Copying cost of 12 copies @ .15 per page | 1.80 |
| 3/1/2005-KQ 3/31/2005 | | Lexis | 8.28 |
| KQ | | Copying cost for 228 copies @ .15 per page | 34.20 |
| 4/1/2005-KQ 4/30/2005 | | Copying cost - 1075 pages @ .15 each | 161.25 |
| 4/18/2005 KQ | | Medical Records - Community Medical Care - Dr. Jaditz | 15.00 |
| 4/29/2005 KQ | | Witness Fee | 57.50 |
| 5/1/2005-KQ 5/31/2005 | | Copying cost 1518 pages @ .15 each | 227.70 |
| 5/3/2005 KQ | | Service Fee (Shriber and Smith) | 75.00 |
| 6/1/2005-KQ 6/30/2005 | | Copying cost 817 pages @ .15 each | 122.55 |
| 7/1/2005-KQ 7/31/2005 | | Copying cost 728 pages @ .15 each. | 109.20 |
| KQ | | Lexis | 31.89 |
| 7/19/2005 KQ | | Deposition Costs for Jill Celli on 7/12/05 201 pages - Gallagher Reporting Inv. #2487A | 615.25 |
| 8/1/2005-KQ 8/31/2005 | | Copying cost - 797 pages @ .15 each. | 119.55 |
| 8/11/2005 KQ | | Deposition Costs for Keystone Court Reports Inv. #30200 for $950.10 for witnesses: F.Rosetti, C.Lamanna, M.Homish, J. O'Hora. | 475.05 |
| 9/1/2005-KQ 9/30/2005 | | Copying cost - 769 pages @ .15 each | 115.35 |

Jill Celli

Page    17

| | | | Amount |
|---|---|---|---|
| 9/15/2005 KQ | FedEx | | 17.09 |
| 10/1/2005-KQ 10/31/2005 | Copying cost - 174 pages @ .15 each | | 26.10 |
| 10/20/2005 KQ | Service Fee - Tri-State Process Services - subpoena to Jeffrey Tucker. | | 100.00 |
| 11/1/2005-KQ 11/30/2005 | Copying cost - 44 pages @ .15 each | | 6.60 |
| 12/1/2005-KQ 12/31/2005 | Copying cost - 20 pages @ .15 each | | 3.00 |
| KQ | Lexis | | 2.94 |
| | Total costs | | $2,912.00 |
| | Total amount of this bill | | $72,892.00 |
| | Balance due | | $72,892.00 |

For Professional Services Rendered Through January 20, 2006.

Attorney Rates:
Kevin C. Quinn -          273.6 hours @ $200.00 = $54,720.00
Frank J.Tunis -            83.9 hours @ $150.00 = $12,585.00
Joseph T. Wright -        10.7 hours @ $250.00 =  $2675.00

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JILL CELLI,             :

                :

      Plaintiff,      :     No. 3:04-CV-02262

                :

      v.           :

                :    JURY TRIAL DEMANDED

NORTHEASTERN EDUCATIONAL  :

INTERMEDIATE UNIT 19,    :

FRED R. ROSETTI, Ed.D.,    :

CLARENCE LEMANNA, Ed.D.,  :

SUSAN WZOREK, JAMES O'HORA, :

KATHLEEN RACHOWSKI,    :

THE SCHOOL DISTRICT OF    :    (Judge Caputo)

ABINGTON HEIGHTS, DAVID    :

ARNOLD, Ed.D., MARIELLEN    :

SLUKO, MARY ALICE BARTZ    :

and BARBARA URNOSKIE,      :

                :    (ELECTRONICALLY FILED)

      Defendants.    :

## DECLARATION OF JILL CELLI

I, Jill Celli, hereby declare under penalty of perjury as follows:

1.    I am the Plaintiff in the above matter, which is a companion case to Mederios v. NEIU, et al., Action No. 3:04-CV-02263.

2.    Both this action and Mrs. Mederios's companion action arise out of the retaliation Mrs. Mederios and I experienced by all of the named Defendants after we reported to our former employer, Defendant NEIU #19, and, later, to the Lackawanna County District Attorney's Office, that we had witnessed Defendant Susan Wzorek, a

former NEIU #19 teacher, physically, verbally and emotionally abusing autistic students in her NEIU classroom at the Clarks Summit Elementary School ("CSE").

3.     Although the facts and circumstances giving rise to our claims are similar, Mrs. Mederios and I specifically requested that our attorneys, Attorney Kevin Quinn and his law firm, Wright & Reihner, P.C., file our Complaints as separate actions.  We made this request out of concern that as our cases progressed, Mrs. Mederios and I may not agree on a particular litigation strategy, such as whether to settle, should a reasonable offer be made, or to instead insist on a jury trial.  By maintaining separate actions, Mrs. Mederios and I felt that we would be free to decide upon a particular strategy without concern over how that strategy may impact on each other's case.

4.     Although Mrs. Mederios and I believed when we brought these actions that we were each entitled to be compensated for the economic and emotional injuries caused by the Defendants, there was a much more important goal that Mrs. Mederios and I had in mind when we brought these lawsuits.  Mrs. Mederios and I were subjected to torment, scorn, harassment and retaliation by the administrators, teachers and staff of both NEIU #19 and CSE because we stood up for the rights of the autistic students being abused by Mrs. Wzorek – many of whom cannot even speak.  We were accused of violating a "silent code" among educators when we reported Mrs. Wzorek's abuses and, in front of all of our peers at NEIU and CSE, were treated as total outcasts.  Because of these experiences, the main objective Mrs. Mederios and I

2

had in mind when we brought our lawsuits was to expose the Defendants' wrongful and shameful conduct in the hopes that other teachers, aides or educational employees who may happen to witness student abuses in the classroom in the future will not have to live in fear of the consequences of coming forward to report those abuses to the appropriate authorities. By our lawsuits, Mrs. Mederios and I hoped to expose and abolish the so-called "silent code" we were accused of breaking.

5.      Although Mrs. Mederios and I no longer work for NEIU #19, we are confident that we have accomplished the foregoing goals and that, as a result, students, particularly handicapped students, will be at least a little safer in the classroom.

6.      As far as the economic aspect of this case is concerned, Mrs. Mederios and I are thrilled with the outstanding results our attorneys have achieved for us. The $50,000 payment Mrs. Mederios and I each received under the Defendants' Offer of Judgment represents more than four (4) times the annual salary we were receiving from NEIU #19. In light of the Defendants' claims throughout this litigation that Mrs. Mederios and I did not suffer any economic damages as a result of their actions, we feel that our attorneys' ability to achieve a resolution that paid us more than four (4) times our annual salary was an excellent result. We also know that this excellent result was achieved only because of the diligent, dedicated and spirited efforts of our attorneys.

3

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of January, 2006.

Jill Celli

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN MEDERIOS, | : | |
| | : | |
| Plaintiff, | : | No. 3:04-CV-02263 |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| NORTHEASTERN EDUCATIONAL | : | |
| INTERMEDIATE UNIT 19, | : | |
| FRED R. ROSETTI, Ed.D., | : | |
| CLARENCE LEMANNA, Ed.D., | : | |
| SUSAN WZOREK, JAMES O'HORA, | : | |
| KATHLEEN RACHOWSKI, | : | |
| THE SCHOOL DISTRICT OF | : | (Judge Caputo) |
| ABINGTON HEIGHTS, DAVID | : | |
| ARNOLD, Ed.D., MARIELLEN | : | |
| SLUKO, MARY ALICE BARTZ | : | |
| and BARBARA URNOSKIE, | : | |
| | : | (ELECTRONICALLY FILED) |
| Defendants. | : | |

## DECLARATION OF ROBIN MEDERIOS

I, Robin Mederios, hereby declare under penalty of perjury as follows:

1.    I am the Plaintiff in the above matter, which is a companion case to Celli v. NEIU, et al., Action No. 3:04-CV-02262.

2.    Both this action and Ms. Celli's companion action arise out of the retaliation Ms. Celli and I experienced by all of the named Defendants after we reported to our former employer, Defendant NEIU #19, and, later, to the Lackawanna County District Attorney's Office, that we had witnessed Defendant Susan Wzorek, a

former NEIU #19 teacher, physically, verbally and emotionally abusing autistic students in her NEIU classroom at the Clarks Summit Elementary School ("CSE").

3.    Although the facts and circumstances giving rise to our claims are similar, Ms. Celli and I specifically requested that our attorneys, Attorney Kevin Quinn and his law firm, Wright & Reihner, P.C., file our Complaints as separate actions. We made this request out of concern that as our cases progressed, Ms. Celli and I may not agree on a particular litigation strategy, such as whether to settle, should a reasonable offer be made, or to instead insist on a jury trial. By maintaining separate actions, Ms. Celli and I felt that we would be free to decide upon a particular strategy without concern over how that strategy may impact on each other's case.

4.    Although Ms. Celli and I believed when we brought these actions that we were each entitled to be compensated for the economic and emotional injuries caused by the Defendants, there was a much more important goal that Ms. Celli and I had in mind when we brought these lawsuits. Ms. Celli and I were subjected to torment, scorn, harassment and retaliation by the administrators, teachers and staff of both NEIU #19 and CSE because we stood up for the rights of the autistic students being abused by Mrs. Wzorek – many of whom cannot even speak. We were accused of violating a "silent code" among educators when we reported Mrs. Wzorek's abuses and, in front of all of our peers at NEIU and CSE, were treated as total outcasts. Because of these experiences, the main objective Ms. Celli and I had in mind when we brought our lawsuits was to expose the Defendants' wrongful and shameful

2

conduct in the hopes that other teachers, aides or educational employees who may happen to witness student abuses in the classroom in the future will not have to live in fear of the consequences of coming forward to report those abuses to the appropriate authorities. By our lawsuits, Ms. Celli and I hoped to expose and abolish the so-called "silent code" we were accused of breaking.

5.      Although Ms. Celli and I no longer work for NEIU #19, we are confident that we have accomplished the foregoing goals and that, as a result, students, particularly handicapped students, will be at least a little safer in the classroom.

6.      As far as the economic aspect of this case is concerned, Ms. Celli and I are thrilled with the outstanding results our attorneys have achieved for us. The $50,000 payment Ms. Celli and I each received under the Defendants' Offer of Judgment represents more than four (4) times the annual salary we were receiving from NEIU #19. In light of the Defendants' claims throughout this litigation that Ms. Celli and I did not suffer any economic damages as a result of their actions, we feel that our attorneys' ability to achieve a resolution that paid us more than four (4) times our annual salary was an excellent result. We also know that this excellent result was achieved only because of the diligent, dedicated and spirited efforts of our attorneys.

3

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _19_ day of January, 2006.

Robin Mederios